# Exhibit A



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

ELEGANT MASSAGE, LLC d/b/a LIGHT
STREAM SPA, on behalf of itself and all
others similarly situated,

     Plaintiff,

     v.                               CIVIL ACTION NO. 2:20-cv-265

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE AND CASUALTY
COMPANY,

     Defendant.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is State Farm Mutual Automobile Insurance Company's and State Farm

Fire and Casualty Company's (collectively, "State Farm" or "Defendants"), Motion to Dismiss

under Federal Rule of Civil Procedure 12(b)(6). ECF No. 29. Plaintiff has responded in opposition

and Defendants replied. ECF Nos. 39, 41. Having reviewed the parties' filings, this matter is ripe

for judicial determination. For the following reasons, Defendant's Motion to Dismiss is **DENIED**

**IN PART AND GRANTED IN PART.**

### I.   FACTUAL AND PROCEDURAL HISTORY

The following facts taken from Elegant Massage, LLC's ("Elegant" or "Plaintiff") Complaint

are considered true and cast in the light most favorable to Elegant. ECF No. 1; *see also, Adams v.*

*Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Since 2016, Elegant has owned and operated Light Stream Spa which provides therapeutic

massages in Virginia Beach, Virginia. On July 22, 2019, State Farm sold an insurance policy

(Policy No. 96-C6-P556-1) ("the Policy") to Plaintiff. *See* ECF No. 1 at Exhibit 1. The Policy

1

issued to Plaintiff is an "all risk" commercial property policy, which covers loss or damage to the covered premises resulting from all risks other than those expressly excluded. *Id.* The Policy was effective through July 22, 2020 and Plaintiff paid an annual premium of $475.00. *Id.* at ¶ 27. The Policy includes coverage of "Loss of Income and Extra Expense." The standard form for Loss of Income and Extra Expense Coverage is identified as CMP-4705.1. *Id.* at ¶ 33. Under the provision, the policy provides for the loss of business income sustained as a result of the suspension of business operations which includes action of a civil authority that prohibits access to the Plaintiff's business property. *Id.* at ¶ 34-35. The Policy also states that it does not cover Exclusions for "Fungi, Virus or Bacteria," "Ordinance or Law," "Acts or Decisions," or "Consequential Loss" *Id.*

On March 13, 2020, President Donald J. Trump issued a National Emergency Concerning the Novel Coronavirus Disease ("COVID-19) Outbreak.[1] On March 16, 2020, the Centers for Disease Control (CDC) issued guidance recommending the implementation of "social distancing" policies to prevent the spread of the a novel strain of coronavirus, SARS-CoV-2 ("COVID-19"). On March 20, 2020, Governor Northam and the Virginia State Health Commissioner declared a public health emergency and restricted the number of patrons permitted in restaurants, fitness centers and theaters to ten or less.[2] On March 23, 2020, Governor Northam issued Executive Order No. 53, which ordered the closure of "recreational and entertainment businesses," including "spas" and "massage parlors." ECF No. 30 at Exhibit 1 at 1-4. On March 23, 2020, Governor Northam issued Executive Order No. 55, which ordered all individuals in Virginia to stay home unless they were carrying out necessary life functions. *Id.* at Exhibit 1 at 5-7. On May 8, 2020, the Governor issued Executive Order No. 61, which amended Executive Order Nos. 53 and 55 and, beginning on May

---

1 Proclamation No. 9994, 85 Fed. Reg. 15337 (March 18, 2020). "Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak." ("Presidential COVID-19 Proclamation").
2 Order of Public Health Emergency One, "Amended Order of the Governor and State Health Commissioner Declaration of Public Health Emergency," (March 20, 2020).

15, 2020, eased some of the restrictions. *Id.* at Exhibit 1 at 8-18. Under Executive Order No. 61, spas and message centers were permitted to re-open subject to certain restrictions including limiting occupancy to 50% as well as requiring six feet between workstations, workers and patrons to wear face coverings, and hourly cleaning and disinfection while in operation. However, if businesses were unable to comply with the restrictions in Executive Order No. 61, they were ordered to remain closed. *Id.*

As a result of the policies on social distancing and restrictions on its business, Plaintiff voluntarily closed Light Stream Spa on March 16, 2020 and remained closed through May 15, 2020. *Id.* at ¶ 25. Accordingly, Plaintiff suffered a complete loss of income since closing on March 16, 2020. On March 16, 2020, Plaintiff submitted a claim for loss of business income and extra expenses under the Policy. *Id.* at ¶ 42. On March 26, 2020, Defendants denied Plaintiff's claim ("Denial Letter"). *Id.* The Denial Letter stated that the grounds for denial were because Plaintiff voluntarily closed their business on March 16, 2020, there was no civil order to close the business, there was no known damage to the business space or property resulting from COVID-19, and the Loss of Income Coverage excludes coverage for loss caused by virus. *Id.*

On May 27, 2020, Plaintiff filed the instant Class Action complaint for Declaratory Judgement (Count I) and Breach of Contract (Count II) against Defendants, pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the proposed class and sub-class. *Id.* at ¶ 48. On July 13, 2020, Plaintiff filed a First Amended Complaint ("FAC") stating that it is bringing Counts I and II on behalf of itself and the proposed class and sub-class, as well as adding a claim for Breach of Covenant of Good Faith and Fair Dealing (Count III). ECF No. 20 at ¶ 173. On August 11, 2020, Defendants filed a Motion to Dismiss Count II. ECF No. 29. Plaintiff responded in opposition and Defendants replied. ECF Nos. 39, 41.

3

## II.   LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.)). In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c).

### B. Class Certification

In order to certify a suit as a class action, the proponent of class certification has the burden of establishing that the conditions enumerated in Rule 23 of the Federal Rules of Civil Procedure have been met. *Windham v. American Brands, Inc.*, 565 F.2d 59, 64 n.6 (4th Cir. 1977) (en banc)

4

*cert. denied*, 435 U.S. 968, 56 L. Ed. 2d 58, 98 S. Ct. 1605 (1978). The Court must conduct a "rigorous analysis" in determining whether the requirements of Rule 23 have been met. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982). Whether the proponent of certification has met his or her burden is left to the trial court's discretion and will be reversed only for abuse of such discretion. *Windham*, 565 F.2d at 65. In conducting its rigorous analysis of Rule 23, the Court must take a "close look at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *Thorn v. Jefferson—Pilot Life Ins. Co.*, 445 F. 3d 311, 319 (4th Cir. 2004) (internal quotations omitted). "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case." *Id.*

### III. DISCUSSION

#### A. Class Certification

In order to conduct a proper analysis of Plaintiff's allegations on behalf of all members of the proposed classes (or any other class authorized by the Court), Plaintiff must move the Court to apply relevant facts within Plaintiffs' Complaint to Rule 23(a) and (b). However, Plaintiff has not yet moved the Court to certify the class. Therefore, the Motion to Dismiss will only address Counts II and III as they apply to Plaintiff and not on behalf of any members of a proposed class. That is, any matters pertaining to a Class may only be considered after Plaintiff moves for it.

#### B. Subject Matter Jurisdiction and Choice of Law

As an initial matter, the Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff Elegant Massage, LLC, doing business as Light Stream Spa, is a Virginia Corporation and with its principle place of business located in Virginia Beach, Virginia. ECF No. 20 at ⁋ 22. Defendant State Farm Mutual Automobile Insurance Company is organized under the laws of the State of

5

Illinois, is licensed in all 50 states, and has its Corporate headquarters in Bloomington, Illinois. *Id.* at ¶ 23. Defendant State Farm Fire and Casualty Company is organized under the laws of the State of Illinois, provides property insurance for State Farm customers in the United States, and has its Corporate headquarters Bloomington, Illinois. *Id.* at ¶ 24. The amount in controversy exceeds $75,000. *Id.* This Court has personal jurisdiction over Defendants, because they have purposefully availed themselves to jurisdiction in this District by marketing, advertising and selling insurance policies, including the insurance policy sold to Plaintiff, within this District, including through numerous agents doing business in Virginia.

In a diversity action, district courts apply federal procedural law and state substantive law. *See Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631, 635 (4th Cir.2005) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, at 496 (1941)) ("A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits."); *see also, Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). In this case, the Complaint was filed in Virginia, and, therefore, Virginia's choice-of-law rules apply. "'Under Virginia law, a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured.'" *Id.* (citing *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.,* 377 F.3d 408, 419 (4th Cir.2004); *Buchanan v. Doe,* 246 Va. 67, 70 (1993)). Here, Plaintiff received the Policy on July 22, 2019 and, now, alleges breach of contract (Count I) and breach of Covenant of good faith and fair dealing, which are examined based on law in the Commonwealth of Virginia. Va. Code Ann. § 8.1A-304 ("Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement."); *see Charles E. Brauer Co.*, 466 S.E.2d at 385; *see also Allaun v. Scott,* 59 Va. Cir. 461, 465 (2002).

6

### C. Count II: Breach of Contract

In Virginia, the elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 671 S.E.2d 132, 134 (2009). To be actionable, Plaintiff must establish that the breach was material. *Horton v. Horton*, 254 Va. 111, 487 S.E.2d 200, 204 (1997). A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract. *Id.* Plaintiff also bears the burden to establish the element of damages with reasonable certainty. *Nichols Construction Corp. v. Virginia Machine Tool Co., LLC*, 276 Va. 81, 661 S.E.2d 467, 472 (2008). Damages that are contingent, speculative, and uncertain are not recoverable because they cannot be established with reasonable certainty. *Shepherd v. Davis, 265 Va. 108, 574 S.E.2d 514, 524 (2003).*

Here, the issue at heart is whether Plaintiff has sufficiently pleaded facts to establish the plausibility that Defendants breached their duty in the contract by refusing to cover Plaintiff's "accidental direct physical loss" as a result of the COVID-19 Executive Orders.

### 1. *General Principles of Virginia Insurance Contract Interpretation*

In Virginia, "'[c]ourts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document.'" *Seals v. Erie Ins. Exchange,* 277 Va. 558, 562 (2009) (quoting *Floyd v. Northern Neck Ins. Co.,* 245 Va. 153, 158 (1993)); *see Bohreer v. Erie Ins. Grp.*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007) ("[A]n insurance policy is a contract governed by rules of contract interpretation."); *see also, Evanston Ins. Co. v. Harbor Walk Dev., LLC,* 814 F. Supp. 2d 635, 643 (E.D. Va. 2011), *aff'd sub nom. Evanston Ins. Co. v. Germano,* 514 F. App'x 362 (4th Cir. 2013). As such, "when the language in an insurance

7

policy is clear and unambiguous, courts ... give the language its plain and ordinary meaning and enforce the policy as written." *Selective Way Ins. Co. v. Crawl Space Door Sys., Inc.*, 162 F. Supp. 3d 547, 551 (E.D. Va. 2016) (citing *Blue Cross & Blue Shield v. Keller,* 248 Va. 618, at 626 (1994)); *see also, PMA Capital Ins. Co. v. U.S. Airways, Inc.,* 271 Va. 352, 359 (2006) (citation omitted). It is not the function of the Court to "'make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer.'" *Keller,* 248 Va. at 626 (quoting *Pilot Life Ins. Co. v. Crosswhite,* 206 Va. 558, 561 (1965)).

However, "[insurance] companies bear the burden of making their contracts clear." *Res. Bankshares Corp.,* 407 F.3d at 636. "Accordingly, if an ambiguity exists, it must be construed against the insurer." *Id.* (citations omitted). "A policy provision is ambiguous when, in context, it is capable of more than one reasonable meaning." *Id.* (citation omitted). "In determining whether the provisions are ambiguous, we give the words employed their usual, ordinary, and popular meaning." *Nextel Wip Lease Corp. v. Saunders,* 276 Va. 509, 516 (2008) (citation omitted). "An ambiguity, if one exists, must be found on the face of the policy," *Granite State Ins. Co. v. Bottoms,* 243 Va. 228, 233–34 (1992) (citation omitted), and "courts must not strain to find ambiguities." *Res. Bankshares Corp.,* 407 F.3d at 636 (citations omitted). "[C]ontractual provisions are not ambiguous merely because the parties disagree about their meaning." *Nextel Wip,* 276 Va. at 516, 666 S.E.2d at 321.

Finally, the policyholder bears the burden of proving that the policyholder's conduct is covered by the policy." *Res. Bankshares Corp.,* 407 F.3d at 636 (citations omitted). However, "the insurer bears the burden of proving that an exclusion applies." *Bohreer v. Erie Ins. Group,* 475 F.Supp.2d 578, 585 (E.D.Va. 2007) (citations omitted). Therefore, "[w]here an insured has shown that his loss occurred while an insurance policy was in force, if the insurer relies upon exclusionary

language in the policy as a defense, the burden is upon the insurer to prove that the exclusion applies to the facts of the case." *Bituminous Cas. Corp.*, 239 Va. 332, at 336 (1990); *see also Am. Reliance Ins. Co. v. Mitchell*, 238 Va. 543, 547 (1989) ("Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies.").

### 2. *The All-Risk Policy*

#### a. *Coverage*

On July 22, 2019, Plaintiff purchased from Defendant an "all-risk" insurance policy which covers loss or damage to the covered commercial property resulting from all risks other than those expressly excluded. ECF No. 1 at Exhibit 1. Although, the Policy incorrectly names "Ladies Spa Inc." as the insured, instead of Elegant Massage, LLC d/b/a Light Stream Spa, the Policy correctly identifies Plaintiff's principal place of business located at 665 Newtown Road, Suite 114, Virginia Beach, Virginia 23462, as the premises covered under the Policy. Light Stream Spa is the only business operating at 665 Newtown Road, Suite 114, Virginia Beach, Virginia 23462. *Id.* at ¶ 32.

The Policy includes coverage of "Loss of Income and Extra Expense." *Id.* Under provision CMP-4705.1, the Policy provides for the loss of business income sustained as a result of the "'suspension[3]' of 'operations'." *Id.* The suspension "must be caused by accidental *direct physical loss* to property at the described premises." (*emphasis added*). The Policy states that it will only pay for "'Loss of Income' that [the policyholder] sustains during the 'period of restoration' that occurs after the date of accidental direct physical loss." *Id.* Under the provision regarding "Extra Expenses," the Policy provides that it will pay "necessary 'Extra Expense' [the policyholder]

---

3 The Policy defines "suspension" as (a) The partial slowdown or complete cessation of your business activities; or (b) that part or all of the described premises is rendered untenable, if coverage for "Loss of Income" applies. *Id. at CMP-4705.1.8.*

9

incur[s] during the 'period of restoration' that [the policyholder] would not have incurred if there had been no accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause of Loss." *Id.* According to the Policy, a Covered Cause of Loss is an "accidental direct physical loss to covered property unless the loss is (1) Excluded in SECTION 1-EXCLUSIONS; or (2) Limited in the Property Subject to Limitations Provisions." *Id.* (*emphasis added*).

Furthermore, the Policy covers the loss of income that results from the suspension of the policyholder's operations. The Policy also covers loss of income and extra expenses "caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply: (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damaged... [and] (2) the action of civil authority is taken in respond to dangerous physical conditions resulting from the damage or continuation of the Covered Clause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged authority." *Id.* Additionally, the loss of income will be reduced to the extent that the policyholder can "resume [] operations, in whole or in part, by using damaged or undamaged property." *Id.*

### b. *Exclusions*

Under SECTION 1- EXCLUSIONS, the Policy states:

1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or

gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: ... a. Ordinance Or Law b. Earth Movement, c. Volcanic Eruption, d. Governmental action, e. Nuclear Hazard, f. Power failure, g. War And Military Action, h. Water, i. Certain Computer-related losses, and j. Fungi, Virus or Bacteria.

*Id.* at Exhibit 1, at 5-6.

There are three relevant exclusions for the instant case. First, the "Fungi, Virus, or Bacteria" exclusion does not cover for loss of income and extra expense due to "(2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease" or (3) [a]ny loss of use or delay in rebuilding covered property, including any associated cost of expense, due to interference at the described premises or location of the rebuilding, repair, or replacement of that property, by 'fungi,' wet or dry rot, virus, bacteria or other microorganism." *Id.* at 5-6.

Second, the "Ordinance or law" exclusion does not cover for loss of income and extra expenses due to the "(1) Enforcement of any ordinance or law: (a) regulating the construction, use or repair of any property; or (b) requiring the tearing down of any property, including the cost of removing its debris. (2) This exclusion applies whether the loss results from: (a) An ordinance or law that is enforced even if the property has not been damaged; or (b) the increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following an accidental direct physical loss to that property." *Id.* at Exhibit 1 at 5.

Third, the "Acts or Decisions" exclusion does not cover for "conduct, acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault." *Id.* at 8.

11

Additionally, the Policy also excludes coverage for consequential losses due to "delay, loss of use or loss of market." *Id.*

### 3. *Plaintiff's Claim*

#### a. *A fortuitous "Direct Physical Loss"*

Based on a plain reading of the all-risk Policy, the Court finds that the Policy covers all accidental or fortuitous "direct physical loss[es]" unless the cause of the loss is explicitly excluded under the contract. *See, Fid. & Guar. Ins. Underwriters, Inc. v. Allied Realty Co.*, 238 Va. 458, 461 (1989) (recognizing that all-risk insurance policies provide broad coverage against all risk other than those the parties know to be inevitable at the time of contracting). In this context, a fortuitous loss is defined in various ways, but is essentially an event that is dependent on chance, an accident, or is unexpected. *See Id.* (holding that "[a] fortuitous loss is one that does not result from any inherent defect in the property insured, ordinary wear and tear, or intentional misconduct"); *see also*, *Ins. Co. of N. Am. v. U.S. Gypsum Co.,* 678 F.Supp. 138, 141 (W.D.Va. 1988), *aff'd,* 870 F.2d 148 (4th Cir. 1989) ("'All risk' insurance contracts are a type of insurance where the insurer agrees to cover all risks of loss except for certain excluded events."). Accordingly, the insured, Plaintiff, has the initial burden of proof to establish that the loss was fortuitous. *U.S. Gypsum Co.,* 678 F.Supp. at 141.

In the instant case, Plaintiff entered into a contract with Defendant on July 19, 2019 with the intent to cover for all foreseeable and unforeseeable, tangible and intangible, risks covered by the Policy which were not explicitly excluded. On March 16, 2020, after the Nationwide and Statewide orders and guidelines to reduce the spread of COVID-19, Plaintiff voluntarily closed Light Stream Spa. *Id.* at ⁋ 25. However, seven days later, on March 23, 2020, Plaintiff was required by Executive Order No. 53 to close until May 15, 2020. *See* ECF No. 1 at ⁋⁋ 79-81. On March 24,

2020, Plaintiff submitted a good faith claim for loss of business income and extra expenses under the Policy for a date of loss starting on March 15, 2020 due to the unexpected loss which impacted the operations and services of the covered commercial property. ECF No. 1 at ¶ 42.

The question here is whether the mandated closures based on the Orders qualifies as a fortuitous loss which caused a "direct physical loss" to the Plaintiff's commercial property. That is, if the Court finds that a plain reading of the Policy provides that Plaintiff's claim was explicitly excluded then the Court must grant the instant Motion to Dismiss. However, if the Court finds ambiguity or multiple interpretations of the Policy that plausibly allow Plaintiff to recover, then the motion to dismiss must be denied.

**b.** *"Direct Physical Loss": A Spectrum of Legal Definitions*

The first key issue is what constitutes a "direct physical loss" in context of the Policy and Plaintiff's circumstances. Since the Policy does not define "direct physical loss," the Court must determine whether "direct physical loss" is ambiguous. *See Lott v. Scottsdale Ins. Co.,* 827 F. Supp. 2d 626, at 631 (E.D. Va. 2011) (interpreting ambiguous insurance policy provisions under Virginia law and noting that "when unambiguous, [insurance policies] must be given their plain and ordinary meaning" but that "policy language is not always clear and unambiguous."). In making this determination, the Policy's provisions "must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." *Va. Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75 (2009). When a disputed policy term is unambiguous, the Court must apply its plain meaning as written. *Id.* "However, if disputed policy language is ambiguous and can be understood to have more than one meaning, [the court must] construe the language in favor of coverage and against the insurer." *Id.*; *see also*, *Copp v. Nationwide Mut. Ins. Co.*, 279 Va. 670, at 681 (2010); *St. Paul*

13

*Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.*, 227 Va. 407, 411 (Va. 1984); *Am. Reliance Ins. Co.*, 238 Va. at 547 ("[D]oubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage[.]"); *Bituminous Cas. Corp.*, 239 Va. at 336 ("[B]ecause insurance contracts are ordinarily drafted by insurers rather than by policyholders, the courts consistently construe such contracts, in cases of doubt, in favor of that interpretation which affords coverage.").

Defendants argue that "direct physical loss" unambiguously requires that there be "structural damage" to the covered property for the Plaintiff to recover under the Policy. ECF No. 29. Particularly, Defendants argue that various district courts in other jurisdictions have interpreted "direct physical loss" to mean perils that cause actual, tangible structural damage to property of the kind caused by hurricane winds, rainwater, and fire, for example. *Id.*[4] However, while the Court recognizes these cases, the Court finds that they are out-of-circuit and non-binding cases which rely on out-of-state law in ruling on what constitutes a "direct physical loss to property"—an interpretation that this Court must make in accordance with Virginia State law and case law.

On the other hand, Plaintiff argues that, under Virginia law, "direct physical loss" has not been consistently interpreted to require structural or tangible damage to property. ECF No. 39 at 11. Particularly, Plaintiff argues that federal courts have interpreted "direct physical loss" to mean the inability to use the premises because of uncontrollable forces. That is, Plaintiff argues that the

---

4 For example, various state and federal district courts have interpreted that mandatory COVID-19 closures orders did not constitute a "direct physical loss" according to their State laws and the specific facts of those cases and insurance policies. *See, e.g Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 2020 WL 6156584 (C.D. Cal. Oct. 19, 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020); *Seifert v. IMT Ins. Co.*, 2020 WL 6120002 (D. Minn. Oct. 16, 2020) ("Minnesota law does not require a showing of structural damage to qualify for coverage for direct physical loss in all-risk policy."); *West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Insurance Companies*, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020); *Vizza Wash, LP d/b/a The Wash Tub v. Nationwide Mutual Insurance Company and Bradley Worth*, No. 5:20-cv-00680-OLG, 2020 WL 6578417, (W.D. Tex. Oct. 26, 2020); *Uncork and Create LLC v. The Cincinnati Insurance Company*, 2020 WL 6436948 (S.D.W.Va. Nov. 2, 2020); *Real Hospitality, LLC d/b/a Ed's Burger Joint v. Travelers Casualty Insurance Company*, 2020 WL 6503405 (S.D. Miss. Nov. 4, 2020); *Raymond H. Nahmad DDS PA v. Hartford Casualty Insurance Company*, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020).

Executive Orders physically prohibited Plaintiff from using the commercial property between March 16, 2020 to May 15, 2020 which resulted in a suspension of its business operations and substantial loss of income. ECF No. 20 at ¶¶ 58, 63, 73, 76.

The Court finds that the phrase "direct physical loss" has been subject to a spectrum of interpretations in Virginia on a case-by-case basis, ranging from direct tangible destruction of the covered property to impacts from intangible noxious gasses or toxic air particles that make the property uninhabitable or dangerous to use. Accordingly, "[w]hen [various] constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer." *Seals,* 277 Va. at 562, 674 S.E.2d 860 (quoting *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co., Inc.,* 227 Va. 407, 411, 316 S.E.2d 734 (1984)). Here, the Court is not straining to find ambiguities but rather is carefully examining the accepted definitions based on Virginia case law to apply to the unprecedented circumstances of this case. *See Res. Bankshares Corp.,* 407 F.3d at 636. Moreover, while both parties disagree over the meaning of "direct physical loss", "[c]ontractual provisions are not ambiguous merely because the parties disagree about their meaning." *Nextel WIP Lease Corp. v. Saunders,* 276 Va. 509, 516, 666 S.E.2d 317 (2008) (citing *Dominion Sav. Bank, FSB v. Costello,* 257 Va. 413, 416, 512 S.E.2d 564 (1999)). Therefore, the Court is tasked with determining where "direct physical loss," as applied to this case, falls on the spectrum of accepted interpretations.

i.  *Structural Damage*

First, at one end of the spectrum, Virginia case law establishes that "direct physical loss" has traditionally, though not exclusively, been defined as covering incidents that result in structural damage to the property caused by, for example, fires, floods, hurricanes, and rainwater. *See, e.g.,*

15

*Whitaker v. Nationwide Mutual Fire Ins. Co.*, 115 F. Supp. 2d 612, at 617 Fn.5 (E.D. Va. 1999) (holding that "[a]ssuming Plaintiffs' loss is fortuitous, the Policy nevertheless covers *only* those fortuitous losses that are direct and physical. Thus, it is the definition of 'direct physical loss' that is dispositive."); *Lower Chesapeake Assocs. v. Valley Forge Ins. Co.*, 260 Va. 77, 89 (2000) (finding that the disputed all-risk policy provision regarding "direct physical damage" was ambiguous and that rainwater damage to a home qualified as direct and physical); *Clark v. Nationwide Mut. Fire Ins. Co., 48 Va. Cir. 454, 1999 WL 370407* (Fairfax Cir. Ct. 1999) (fire damage as a covered loss generally); *Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, 261 F. Supp. 3d 680, 684 (E.D. Va. 2017), *aff'd*, 757 F. App'x 229 (4th Cir. 2018) (holding that an "insurance claim processing fee, payable to insured's property manager under property management agreement between property manager and insured, did not qualify as an extra expense covered under property insurance policy, which provided coverage for direct physical loss to building or business personal property."). However, Plaintiff's claim is distinguishable because Plaintiff's covered property did not suffer from a structural form of direct physical loss.

ii.   *Distinct and Demonstratable Physical Alteration*

Second, some court have also found physical loss when a plaintiff cannot physically use his or her covered property, even without tangible structural destruction, if a plaintiff can show a distinct and demonstrable physical alteration to the property. *See e.g., TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013) (noting that "physical damage to the property is not necessary, at least where the building in question has been rendered unusable by physical forces."); *Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 493 (1998) ("'Direct physical loss' provisions require only that a covered property be injured, not destroyed. Direct physical loss also may exist in the absence of structural damage to the insured

16

property." (citation omitted)); *See, Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.* 261 F. Supp. 3d 680, at 685 (E.D. Va. 2017), *aff'd*, 757 F. App'x 229 (4th Cir. 2018) (Holding that a payment of an insurance processing fee, on its own, does not constitute a direct physical loss to property.); *see also, Mellin v. N. Sec. Ins. Co., Inc.*, 167 N.H. 544, 115 A.3d 799 (2015) ("Physical loss" within meaning of homeowners policy covering direct physical loss to property may include not only tangible changes to the insured property, but also changes that are perceived by the sense of smell and that exist in the absence of structural damage; however, these changes must be distinct and demonstrable."). Recently, in cases dealing with a similar issue as the instant matter, sister jurisdictions narrowly relied on this interpretation to dismiss plaintiff's action. *See 10E, LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04418-SVW-ASx, 2020 WL 5359653, at *4 (C.D. Cal. Sept. 2, 2020) (holding that "[p]hysical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration'") (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal.App.4th, 766, 799 (2010)); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, No. 220CV05663VAPDFMX, 2020 WL 6440037, at *3 (C.D. Cal. Oct. 27, 2020). In the instant matter, there is no distinct, demonstrable, or physical alteration to the structure of the property. However, this second plausible interpretation of "direct physical loss" does show that if Defendants wanted to limit liability of "direct physical loss" to strictly require structural damage to property, then Defendants, as the drafters of the policy, were required to do so explicitly. *See Allstate Ins. Co. v. Gauthier*, 273 Va. 416, 420 (2007) (noting that if insurer wanted to not provide coverage under certain circumstances "it needed to use language clearly accomplishing that result."); *see also, Res. Bankshares Corp.*, 407 F.3d at 636 ("[b]ecause insurance companies typically draft their policies without the input of the insured, the companies

17

bear the burden of making their contracts clear."). Defendants were fully aware of cases that interpreted intangible damage as a "direct physical loss" promulgated before the issuance of Plaintiff's policy. Since Defendants did not explicitly include "structural damage" in the language, the Policy may be construed in favor of more coverage based on plausible interpretations.

    iii.   <u>*Uninhabitable, Inaccessible, and Dangerous to Use*</u>

    Third, courts have also interpreted direct physical loss to include incidents that make the covered property uninhabitable, inaccessible, and dangerous to use for the owners and clients because of, for example, intangible and invisible noxious gasses or toxic air particles. *See, e.g.*, *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013) ("[u]nder Virginia law, insured's residence sustained "direct physical loss" within meaning of homeowners policy when it was rendered uninhabitable by toxic gases released by drywall manufactured in China, even though drywall was still intact.); *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34 (1968) (en banc ) (gasoline fumes which rendered church building unusable constitute physical loss); *Farmers Ins. Co. of Oregon v. Trutanich, 123 Or. App.* 6, 858 P.2d 1332, 1336 (1993) (cost of removing odor from methamphetamine lab constituted a direct physical loss); *Murray v. State Farm Fire & Cas. Co., 203 W.Va.* 477, 509 S.E.2d 1, 17 (1998) (home rendered unusable by increased risk of rockslide suffered direct physical loss even in the absence of structural damage); *See Port Authority of N.Y. & N.J. v. Affiliated FM Ins. Co.,* 311 F.3d 226, 236 (3d Cir.2002) ("'[P]hysical loss or damage' occurs only if an actual release of asbestos fibers ... has resulted in contamination of the property ..., *or the structure is made useless or uninhabitable* ...." (emphasis added)); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934, at *6 (D.N.J. Nov. 25, 2014) (holding there was a direct physical loss to property when "ammonia physically

rendered the facility unusable for a period of time"); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) (finding "[a]lthough asbestos contamination does not result in tangible injury to the physical structure of a building, a building's function may be seriously impaired or destroyed and the property rendered useless by [its] presence"); *Homeowners Choice Prop. & Cas. v. Miguel Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017) ("[I]t is clear that the failure of the [property] to perform its function constituted a 'direct' and 'physical' loss to the property within the meaning of the policy."). However, the Court does not go as far as to interpret "direct physical loss" to mean whenever "property cannot be used for its intended purpose" due to intangible sources. *Pentair v. American Guarantee and Liability Ins.,* 400 F.3d 613, 616 (8th Cir. 2005).

*    *    *

Therefore, given the spectrum of accepted interpretations, the Court interprets the phrase "direct physical loss" in the Policy in this case most favorably to the insured to grant more coverage. *See Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, at 81 (2009) ("[I]f disputed policy language is ambiguous . . . we construe the language in favor of coverage and against the insurer."). Based on the case law, the Court finds that it is plausible that a fortuitous "direct physical loss" could mean that the property is uninhabitable, inaccessible, or dangerous to use because of intangible, or non-structural, sources. *See US Airways, Inc. v. Commonwealth Ins. Co.*, 2004 WL 1094684, at *5 (Va. Cir. Ct. May 14, 2004) (holding FAA order grounding flights at Reagan National Airport could constitute direct physical loss when "nothing in the Policy . . . requires that [there] be damage to [the insured's] property."). Here, while the Light Stream Spa was not structurally damaged, it is plausible that Plaintiff's experienced a direct physical loss when the property was deemed uninhabitable, inaccessible, and dangerous to use by the Executive

19

Orders because of its high risk for spreading COVID-19, an invisible but highly lethal virus. That is, the facts of this case are similar those where courts found that asbestos, ammonia, odor from methamphetamine lab, or toxic gasses from drywall, which caused properties uninhabitable, inaccessible, and dangerous to use, constituted a direct physical loss.

Accordingly, the Court finds that Plaintiff submitted a good faith plausible claim to the Defendants for a "direct physical loss" covered by the policy. Therefore, Plaintiff's complaint has alleged "facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Brenner v. Lawyers Title Ins. Corp.,* 240 Va. 185, 397 S.E.2d 100, 102 (1990); *see also, Reisen v. Aetna Life and Cas. Co.*, 225 Va. 327, 302 S.E.2d 529, 531 (1983); *See* ECF No. 20 at ¶¶ 57-65, ¶¶ 79-95.

### c. *Civil Authority Provision*

The Policy provides coverage for extra expenses and loss of income caused by "action of a civil authority that prohibits access to the described premises, provided that both of the following apply: (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) The action of the civil authority is taken in response to dangerous physical conditions resulting from the damage of continuation of the Covered Cause of loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property." ECF No. 1 at Exhibit 1.

Plaintiff alleges that the Civil Authority Coverage applies because (1) COVID-19 caused damage to property other than Plaintiff's property, ECF No. 1 at ¶ 85; (2) the damage was caused by a Covered Cause of Loss; (3) the Orders were issued by a civil authority—state and local executives; (4) the governmental authorities limited and prohibited access to the nearby property

20

prior to issuing the Orders, *Id.* at ¶¶ 45–47, ¶85; and (5) these actions were taken in response to a dangerous physical condition. *Id.* at ¶¶ 38, 45–53. *See, e.g., Assurance Co. of Am. v. BBB Serv. Co.,* 593 S.E.2d 7, 8–9 (Ga. Ct. App. 2003) (civil authority coverage applied where order was issued in response to hurricane after storm progressed and caused damage to property other than the insured premises). Particularly, Plaintiff alleges that "[t]he Orders were issued as a result of *physical damage and dangerous physical conditions* occurring in properties all around cities and business districts. As a result of direct physical loss stemming from the pandemic, Light Stream Spa's operations were suspended, and it lost business income and incurred other covered expenses." *Id.* at ¶ 85 *(emphasis added).*

Defendants argue that the Civil Authority Coverage does not apply because it only applies when "access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property." ECF No. 30 at 22 (citing *Dickie Brennan & Co. v. Lexington Ins. Co.,* 636 F.3d 683, 686-87 (5th Cir. 2011); *see United Air Lines, Inc. v. Ins. Co. of State of Pa.,* 439 F.3d 128, 131 (2d Cir. 2006); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 440 F. Supp. 3d 520, 528-29 (D.S.C. 2020); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, at *9 (S.D. Tex. Feb. 15, 2008).).

Here, the Court finds that the Civil Authority Coverage does not apply because Plaintiff has not shown a causal link between any physically damaged or dangerous surrounding properties proximate to the insured property and a civil authority prohibiting Plaintiff's from accessing or using their property. That is, the Executive Orders were issued because "COVID-19 presents an ongoing threat to [Virginia] communities", and not because of prior actual "physical damage" to its own property or surrounding properties. *See* Exec. Or. 53 at 1. Therefore, Defendant's Motion

21

is **GRANTED IN PART** on this ground.

### 4. Defendants Shifted Burden of Proof: Exclusions

Despite the inapplicability of the Civil Authority Provision, Plaintiff has still established a plausible claim for a fortuitous "direct physical loss" under the Policy. Thus, the burden now shifts to the insurance provider, Defendants, to show that the loss is excluded under the contract. *See Bituminous Cas. Corp. v. Sheets*, 239 Va. 332, 389 (1990) ("Where an insured has shown that his loss occurred while an insurance policy was in force, but the insurer relies upon exclusionary language in the policy as a defense, the burden is upon the insurer to prove that the exclusion applies to the facts of the case."); *TravCo Ins. Co. v. Ward*, 284 Va. 547 (2012) ("[T]he burden is upon the insurer to prove that an exclusion of coverage applies."); *see also, Reisen* 302 S.E.2d at 531 (holding this burden is not especially onerous since the insurer must defend unless "it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations." (citing *Travelers Indem. Co. v. Obenshain,* 219 Va. 44, 245 S.E.2d 247, 249 (1978)).

On March 26, 2020, Defendants denied Plaintiff's claim ("Denial Letter"). *Id.* at Exhibit 2. The Denial Letter stated that the grounds for denial were because Plaintiff voluntarily closed their business on March 16th because of waning business, there was no civil order to close the business as of March 24, 2020, there was no known physical damage to the business space or property resulting from COVID-19, and the Policy excluded losses caused by a virus. *Id.* In the Denial Letter, Defendant State Farm did not provide an explanation of how the exclusions applied specifically to the Plaintiff but rather provided verbatim language of SECTION 1- EXCLUSIONS.

### a. Virus Exclusion

As with the other provisions of an insurance policy, the interpretation of an exclusionary clause is an issue of law. *See Res. Bankshares Corp.*, 407 F.3d at 636. (4th Cir. 2005).

In their Motion to Dismiss, Defendants argue that the Virus Exclusion applies as defined in SECTION 1- EXCLUSIONS of the Policy. ECF No. 29 at 7. Defendants argue that the Virus Exclusion unambiguously applies in this circumstance because COVID-19 is at the heart of the Executive Orders that required Plaintiff to close their business and "applies to any loss where a virus is anywhere in the chain of causation." *Id.* at 10. Specifically, Defendants allege that the Virus Exclusion has an expansive anti-concurrent causation clause which excludes from coverage "for losses if virus is 'in any sequence' in the chain of causation, even if there are also other causes." *Id.* (citing *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 351, 354 (5th Cir. 2007); *see also Metro Brokers, Inc. v. Transportation Ins. Co.*, 603 F. App'x 833, 836 (11th Cir. 2015)). Notably, the Court finds that the expansive anti-concurrent causation clause is not a recognized or settled doctrine in the Court's jurisdiction.

On the other hand, Plaintiff alleges that the loss of business occurred as a result of the Orders that mandated specific kinds of businesses, like the Light Stream Spa, to discontinue operations from March 16, 2020 to May 15, 2020 to prevent the spread of COVID-19. ECF No. 1. Plaintiff also asserts that the Court should find that the Virus Exclusion does not apply because COVID-19 was not present at Plaintiff's property and is not the basis for the loss of income. ECF No. 39 at 16-18.

The Fungi, Virus or Bacteria Exclusion specifically excludes losses from: "(1) Growth, proliferation, spread or presence of 'fungi' or wet or dry rot; or (2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease; and (3)

We will also not pay for . . . (a) Any remediation of "fungi", wet or dry rot, virus, bacteria or other microorganism . . . ." ECF No. 20 at Exhibit 2.

The Court finds that the Virus Exclusion does not apply here and that the anti-concurrent theory has not been established as law in this jurisdiction. Thus, to be enforceable, the insurer "must draft the language of an exclusion conspicuously, plainly and clearly set forth any limitation on coverage to the insured." *Waste Mgmt., Inc. v. Great Divide Ins. Co.*, 381 F. Supp. 3d 673, at 683 (E.D. Va. 2019) (citation omitted).

Although the Policy does not define "Virus," the Court will base its analysis on a plain reading of the Virus Exclusion taken together with the exclusion language as a whole. *See Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 80 (2009)) ("Provisions of an insurance policy must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent."); *see also, Copp*, 279 Va. at 681 ("Each phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein."). Accordingly, the Court finds that the Virus Exclusion particularly deals with the "[g]rowth, proliferation, spread or presence" of "virus, bacteria or other microorganism" just as it applies to "'fungi' or wet or dry rot." *Id.* Indeed, the plain reading of the language indicates that the Policy excludes coverage for losses stemming from the "[g]rowth, proliferation, spread or presence" of "'fungi' or wet or dry rot" or "[v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease[.]" Furthermore, the Policy also provides that it will not cover for remediation or removal of virus, bacteria, or fungi at the property which includes "tear out and replace[ment]" of building parts to access the virus and "contain[ment], treat[ment], detoxify[cation], neutraliz[ation] or

dispos[al]" of the virus). *Id.* This supports the interpretation that the Virus Exclusion applies where a virus has spread throughout the property. Other state and federal courts have interpreted similar virus, bacteria, and fungi exclusions in the same way. *See, e.g., Mount Vernon Fire Ins. Co. v. Adamson*, 2010 WL 3937336, at *4 (E.D. Va. Sept. 15, 2010) (exclusions barring coverage for mold exposure barred claims for mold exposure); *Poore v. Main Street Am. Assurance Co.*, 355 F. Supp. 3d 506, 512 (W.D. Va. 2018) (finding mold exclusion barred coverage from losses stemming from mold in the insured's property); *Alexis v. Southwood Ltd. P'ship*, 792 So. 2d 100, 104 (La. Ct. App. 2001) (communicable disease exclusion barred coverage from illness after exposure to raw sewage); *Evanston Ins. Co. v. Harbor Walk Development, LLC*, 814 F. Supp. 2d 635, 652 (E.D. Va. 2011) (finding pollution exclusion which barred claims stemming from bodily injury or property damaged caused by pollutants barred claims stemming from bodily injury or property damage caused by pollutants). Therefore, in applying the Virus Exclusion there must be a direct connection between the exclusion and the claimed loss and not, as the Defendants argue, a tenuous connection anywhere in the chain of causation. That is, although the Virus Exclusion does require that the virus be the cause of the policyholder's loss, the connection must be the immediate cause in the chain.

Here, Plaintiff is neither alleging that there is a presence of a virus at the covered property nor that a virus is the direct cause of the property's physical loss. Also, Plaintiff does not allege that the Executive Orders the Commonwealth of Virginia issued were as a result of "growth, proliferation, spread or presence" of virus contamination at the Plaintiff's property. Rather, Plaintiff alleges that the Orders were the "sole cause of the Plaintiff's […] loss of business income and extra expense." ECF No. 20 at ¶ 84. Moreover, while some businesses could continue operating despite the COVID-19 social distancing guidelines, the Executive Orders specifically

classified Plaintiff's type of property, a spa, as a hotspot for COVID-19 and, thus, selectively ordered that it be closed as a preventative health measure. Therefore, Defendants have failed to meet its burden to show that the Virus Exclusion applies to Plaintiff's claim.

### b. Ordinance and Law Exclusion

Defendants also assert that the Ordinance and Law Exclusion applies. ECF No. 29 at 25-26. The "Ordinance or law" Exclusion bars coverage for any loss due to "[t]he enforcement of any ordinance or law" "regulating the ... use ... of any property," and "applies ... even if the property has not been damaged." ECF No. 20 at Exhibit 2 at 5. The Policy states that the ordinance or law must "(a) regulate the construction, use or repair... or (b) requir[e] the tearing down of any property." *Id.* The Policy also provides that the exclusion applies "whether the loss results from: (a) An ordinance or law that is enforced even if the property has not been damaged; or (b) the increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following an accidental direct physical loss to that property." *Id.*

Here, however, the Court concludes that the Executive Orders, which were temporary restrictions that impacted the Plaintiff's business, were not ordinances or laws such as safety regulations or laws passed by a legislative body regulating the construction, use, repair, removal of debris, or physical aspects of the property. Therefore, there is no ordinance or law, from a legislative body, that prohibits the physical use of Plaintiff's covered property. Furthermore, it is clear that the Ordinance or law Exclusion applies to ordinances related to the structural integrity, maintenance, construction, or accessibility due to the property's physical structural state, which existed *before*. The physical structural integrity of the covered property is not the central issue in

26

this case. Thus, "Ordinance or Law" exclusion is unavailable to the Defendants to dismiss Plaintiff's claims.

### c. *Acts or Decisions Exclusion*

The "Acts or Decisions" Exclusion bars coverage for any loss caused by "[c]onduct, acts or decisions ... of any person, group, organization, or governmental body whether intentional, wrongful, negligent or without fault." ECF No. 20 at Exhibit 2 at 8.

Some courts have found the "acts or decisions" exclusion in similar insurance policies to be ambiguous and concluded that coverage was not excluded. As one court explained, if the exclusion were to be taken literally, "it would exclude coverage from all acts and decisions of any character of all persons, groups, or entities. Such an interpretation would leave the insurance policy practically worthless." *Jussim v. Massachusetts Bay Ins. Co.*, 33 Mass. App. Ct. 235, 238–39, 597 N.E.2d 1379, 1382 (1992), *aff'd as amended*, 415 Mass. 24, 610 N.E.2d 954 (1993); *see also*, *St. Paul Fire & Marine Ins. Co. v. Gen. Injectables & Vaccines, Inc.*, No. CIV.A.98-07370R, 2000 WL 270954, at *5, n.5 (W.D. Va. Mar. 3, 2000); *Cincinnati Holding Co., LLC v. Fireman's Fund Ins. Co.*, No. 1:17CV105, 2020 WL 635655, at *9 (S.D. Ohio Feb. 11, 2020); *see also Mettler v. Safeco Ins. Co. of Am.*, No. C12-5163 RJB, 2013 WL 231111, at *6 (W.D. Wash. Jan. 22, 2013) (same). However, some courts have held that if the acts or decisions of the Plaintiff were the cause of the damage, then the "acts or decisions" exclusion does apply. *See Landmark Hosp., LLC v. Cont'l Cas., Co.*, No. CV 01-0691, 2002 WL 34404929, at *2 (C.D. Cal. July 2, 2002) (concluding the "acts or decisions" exclusion is unambiguous and holding that "[t]his exclusion provision excuses Defendant from providing coverage for damages caused by Plaintiff's negligence" if it is later determined that "Plaintiff's acts are the predominate cause of the damages.").

Here, the Court finds that the "acts and decisions" exclusion is so ambiguous and broad, that taken literally under its plain reading, the Policy would be worthless as any act from any character of all persons, groups, or entities would prohibit coverage. To the extent the language of the Policy is ambiguous, the Court must construe it against the insurer. *See, Hopeman Bros., Inc. v. Cont'l Cas. Co.*, 307 F. Supp. 3d 433, 461 (E.D. Va. 2018); see also, *GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999); *see also* John H. Mathias et al., *Insurance Coverage Disputes (LJP)* § 1.03 (2017) ("Where the following form policy is silent on how to resolve conflicts in wording with the underlying policy or policies it purports to follow, however, the conflict should be resolved in the manner most favorable to the policyholder."). Moreover, in this case, Plaintiff was not the cause of the Executive Orders which issued the covered property to close. Thus, the "Acts or Decisions" exclusion is unavailable to the Defendants to dismiss Plaintiff's claims.

### d. *Consequential Losses Exclusion*

The "Consequential Loss" Exclusion bars coverage for "loss whether consisting of, or directly and immediately caused by … [d]elay, loss of use or loss of market." ECF No. 20 at Exhibit 2 at 6. Between March 16, 2020 to March 22, 2020 (before the Executive Orders), Plaintiff decided to voluntarily close the business as a result of waning business. Therefore, the Court grants that during this period of time, March 16, 2020 to March 22, 2020 (or period before the mandatory closure Orders), Plaintiff was properly barred from coverage under this exclusion. Accordingly, the extent to which Plaintiff's claim is based on this limited period, March 16, 2020 to March 22, 2020, the Defendant's motion is **GRANTED IN PART.**

28

## D. Count III: Breach of Covenant of Good Faith and Fair Dealing

Plaintiff also makes a claim for breach of the duty of good faith and fair dealing. ECF No. 20 at ¶¶ 173-75. "Under Virginia law, the elements of a claim for breach of an implied covenant of good faith and fair dealing are "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures, LTD,* 624 F.Supp.2d 443, 450 (E.D.Va. 2009) (citing *Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.,* 466 S.E.2d 382, 386 (Va. 1996). At minimum, however, it includes "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party [to a contract]." *Id.* (citing Restatement (Second) of Contracts § 205 cmt. a (1981); *see also RW Power Partners, L.P. v. Virginia Elec. & Power Co.,* 899 F.Supp. 1490, 1498 (E.D.Va.1995) (citing, among other authorities, the commentary of Section 205 of the Restatement for a definition of "good faith"). This duty of good faith and fair dealing prohibits a party from acting arbitrarily, unreasonably, and in bad faith. It also prohibits one party from acting in such a manner as to prevent the other party from performing its obligations under the contract. *See* Restatement (Second) of Contracts § 205 cmt. a (1981). Moreover, the United States Court of Appeals for the Fourth Circuit has made clear that every contract governed by the laws of Virginia contains an implied covenant of good faith and fair dealing. *See Va. Vermiculite, Ltd. v. W.R. Grace & Co.,* 156 F.3d 535, 541–42 (4th Cir.1998); *see also, Enomoto,* 624 F.Supp.2d at 450; see also, *SunTrust Mortg., Inc. v. Mortgages Unlimited, Inc.*, No. 3:11CV861-HEH, 2012 WL 1942056, at *3 (E.D. Va. May 29, 2012).

In the instant case, Defendants argue that this claim should be dismissed because there is no coverage under the Policy for Plaintiff's losses. ECF No. 29 at 29. Although coverage is a pre-requisite to a claim for bad faith, the Court has found that Plaintiff has pleaded sufficient facts, which if proved, would fall within the Policy's coverage. *See*, *Builders Mut. Ins. Co. v. Dragas*

*Mgmt. Corp.*, 709 F. Supp. 2d 432, 441 (E.D. Va. 2010) (noting that "coverage is a prerequisite to a claim for bad faith"). Therefore, the Defendants' Motion is **DENIED** on this ground.

*      *      *

In summary, for Plaintiff to establish a Covered Cause of Loss under the Policy, the claim must both constitute an "accidental direct physical loss to" Covered Property and it must not be explicitly excluded by the Policy. ECF No. 20 at Exhibit 1. Here, Plaintiff has pled sufficient facts to state a claim to allow this Court to draw reasonable inferences that relief is plausible on its face for Counts II and III. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Also, since Defendants failed to show that any of the Policy's Exclusions clearly apply, Plaintiff's claims may proceed.

## IV.    CONCLUSION

Based on the foregoing reasons, Defendant's Motion to Dismiss is **DENIED IN PART AND GRANTED IN PART.**

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
December 9 , 2020

Raymond A. Jackson
**United States District Judge**

30