# BROWN & CONNERY, LLP

ATTORNEYS AT LAW
360 HADDON AVENUE
WESTMONT, NEW JERSEY 08108
(856) 854-8900
FAX (856) 858-4967

Susan M. Leming, Esq.
sleming@brownconnery.com

December 16, 2020

**VIA CM/ECF ONLY**
Renée Marie Bumb, U.S.D.J.
Mitchell H. Cohen U.S. Courthouse
1 John F. Gerry Plaza, Room 2040
Camden, NJ 08102-2040

> Re:  **Colby Restaurant Group, Inc., et al. v. Utica National Insurance Group et al.**
> **Civil Action No.: 1:20-cv-05927-RMB-KMW**

Dear Judge Bumb:

Defendants respectfully submit this notice of supplemental authority in connection with Defendants' fully briefed motion to dismiss. (Dkt. No. 17). Attached hereto as Exhibit A is a list of the 15 decisions dismissing similar cases since Defendant's prior notice of supplemental authority filed on December 2, 2020. (Dkt. No. 24). Exhibits B through G are those listed decisions not otherwise available on Westlaw, copies of which are filed herewith.

Of particular note, in *Boulevard Carroll Entertainment Group, Inc. v. Fireman's Fund Insurance Co.*, No. 2:20-cv-11771 (D.N.J. Dec. 14, 2020) (Wigenton, J.), this Court dismissed a business' claims seeking coverage under its property insurance policy for business income allegedly lost due to COVID-19 social-distancing orders. The Court held that the plaintiff's argument that the government orders limited the use of its property "is not enough" to show physical loss or damage to property under New Jersey law. Additionally, the Court stated that "[b]ecause the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiff's losses are tied inextricably to that virus and are not covered by the Policy" due to its virus exclusion.

Additionally, in *Michael Cetta, Inc. v. Admiral Indemnity Co.*, No. 20-cv-4612 (S.D.N.Y. Dec. 11, 2020), the court dismissed a restaurant's claims seeking coverage under its property insurance policy for business income allegedly lost due to COVID-19 social-distancing orders. The complaint in *Michael Cetta,* which was drafted by counsel to Plaintiffs, is substantially similar to the Complaint here. The decision addresses all arguments raised by Plaintiffs in their Opposition. The court held that "'loss of use' does not constitute a 'direct physical loss of or damage to' property" because the plain meaning of that phrase "connotes a negative alteration in the tangible condition of property." The court rejected the policyholder's argument that this interpretation read "loss" and "damage" as coextensive, noting that "physical loss" could include

7BN3711

Hon. Renée Marie Bumb, U.S.D.J.
December 16, 2020
Page 2

"theft or misplacement" or "the complete destruction of property." Finally, the court also dismissed plaintiff's civil authority claims, holding that plaintiff failed to allege "any specific damage to property near [plaintiff]" and that access was never prohibited by the social-distancing orders because plaintiff could have continued to operate its restaurant "in some capacity."

In *10012 Holdings, Inc. v. Sentinel Insurance Co.*, No. 20-cv-4471 (S.D.N.Y. Dec. 15, 2020), the court dismissed similar claims for business income losses attributable to COVID-19 social distancing orders. It held that "loss of use" does not constitute "direct physical loss of or physical damage to property" and dismissed plaintiff's claims for civil authority coverage because "the potential presence of COVID-19 in neighboring properties" did not directly result in the closure of plaintiff's properties.

Further, on December 10, 2020 (Dkt. No. 25), Plaintiffs submitted the case *Elegant Massage LLC v. State Farm Mutual Automobile Insurance Co.*, No. 2:20-cv-000265 (E.D. Va. Dec. 10, 2020). This case, decided under Virginia law, is inapposite and, in any event, wrongly decided. *First*, the "Fungi, Virus, or Bacteria" exclusion in that case was deemed inapplicable because it was purportedly limited to loss caused by the "[g]rowth, proliferation, spread or presence" of a virus—language not included in the Virus Exclusions here. The virus exclusions exclude any loss caused by or resulting from a virus. *Second*, the *Elegant Massage* court found that the Virginia COVID-19 orders determined the spa was at "high risk for spreading COVID-19," and therefore deemed it uninhabitable and shut it down. Here, the relevant orders neither rendered Plaintiffs' properties uninhabitable nor required their closure. Plaintiffs remained able to provide delivery and takeout service from their restaurants at all relevant times. *Third*, Plaintiffs failed to note that the *Elegant Massage* decision dismissed the plaintiff's civil authority claims because, like Plaintiff here, the plaintiff failed to show "a causal link between any physically damaged or dangerous surrounding properties" and a civil authority order.

Finally, on December 14, 2020, Plaintiffs' letter to the Court in response to supplemental authority (Dkt. No. 26) misrepresents that *Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.* (Dkt. No. 23, Ex. B), a recent decision from the Superior Court of New Jersey, Law Division, in Camden County, "do[es] not interpret New Jersey law." This is incorrect. *Mac Property Group* applied New Jersey law and dismissed a New Jersey policyholder's property insurance claims for business income allegedly lost due to COVID-19 social-distancing orders.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

**BROWN & CONNERY, LLP**

*s/ Susan M. Leming*

Susan M. Leming

Enclosures
cc: All Counsel of Record (via CM/ECF)

# EXHIBIT A

## Exhibit A

1. Ex. B, *10012 Holdings, Inc. v. Sentinel Insurance Co.*, No. 20-cv-4471 (S.D.N.Y. Dec. 15, 2020) (granting motion to dismiss because "direct physical loss of or physical damage to property" did not provide coverage for "loss of use").

2. *4431, Inc. v. Cincinnati Insurance Cos.*, No. 5:20-cv-04396, 2020 WL 7075318 (E.D. Pa. Dec. 3, 2020) (granting motion to dismiss because plaintiffs had presented "no allegations that any physical conditions of or on the covered premises have been altered in a way that has resulted in or affected Plaintiffs' loss," and "Plaintiffs maintain the ability to operate at their premises, albeit on a limited basis").

3. Ex. C, *Boulevard Carroll Entertainment Group, Inc. v. Fireman's Fund Insurance Co.*, No. 2:20-cv-11771 (D.N.J. Dec. 14, 2020) (dismissing claims for property insurance coverage because (1) lost income caused by government orders "is not enough" to show physical loss or damage; and (2) the virus exclusion applied because "the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus" and therefore "Plaintiff's losses are tied inextricably to that virus").

4. Ex. D, *Catlin Dental, P.A. v. Cincinnati Indemnity Co.*, No. 20-CA-004555 (Fla. Cir. Ct., Lee Cnty. Dec. 11, 2020) (granting motion to dismiss and holding "the mere presence of a virus in the community do[es] not constitute direct physical loss to the property" and civil authority coverage does not apply because "there was no prohibition of access" to the premises).

5. *El Novillo Restaurant v. Certain Underwriters at Lloyd's, London*, No. 1:20-cv-21525, 2020 WL 7251362 (S.D. Fla. Dec. 7, 2020) (dismissing plaintiffs' claims as "insufficient as a matter of law" because plaintiffs did not "alleg[e] that Plaintiffs' properties sustained any physical damage" or that "access to their restaurants was completely prohibited by order of civil authority").

6. Ex. E, *Franklin EWC, Inc. v. Hartford Financial Services Group, Inc.*, No. 20-cv-04434 (N.D. Cal. Dec. 14, 2020) (granting motion to dismiss amended complaint because "[n]othing in the Virus Exclusion indicates it is limited to viruses arising from the insured premises rather than a pandemic").

7. *Healthnow Medical Center, Inc. v. State Farm General Insurance Co.*, No. 20-cv-04340, 2020 WL 7260055 (N.D. Cal. Dec. 10, 2020) (dismissing claim pursuant to the virus exclusion because "the stay-at-home ordinances plainly sought to prevent COVID-19—a virus—from spreading" and noting the similar analysis adopted by courts "across the country").

8. *Kessler Dental Associates, P.C. v. Dentists Insurance Co.*, No. 2:20-cv-03376, 2020 WL 7181057 (E.D. Pa. Dec. 7, 2020) (granting motion to dismiss dental office's claims because (1) the virus exclusion "is not ambiguous" and "applies to COVID-19", and the doctrine of regulatory estoppel was irrelevant as the insurer "takes the same position here today as the ISO and AAIS did in 2006"; and (2) "no civil authority order prohibits access to the covered property" and the orders "did not come from damage to a nearby premise").

9. *Michael Cetta, Inc. v. Admiral Indemnity Co.*, No. 20-cv-4612, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020) (granting motion to dismiss because "'loss of use' does not constitute a 'direct physical loss of or damage to' property").

10. *Palmer Holdings & Investments, Inc. v. Integrity Insurance Co.*, No. 4:20-cv-154, 2020 WL 7258857 (S.D. Iowa Dec. 7, 2020) (granting motion to dismiss because (1) "direct physical loss of or damage to property" "requires a physical invasion and loss of use is insufficient to trigger coverage[,]" (2) there is no civil authority coverage because no government order was "issued in response to a dangerous physical condition created by damage to another property" within one mile, and (3) the virus exclusion bars coverage since the order which allegedly caused plaintiff's losses "was issued in response to the COVID-19 pandemic").

11. *Promotional Headwear International v. Cincinnati Insurance Co.*, No. 20-cv-2211, 2020 WL 7078735 (D. Kan. Dec. 3, 2020) (granting motion to dismiss because plaintiff had failed to allege any "direct physical loss of or damage" to its premises because "there are no allegations of a material change or intrusion onto the property itself that rendered it unusable. . . . And there are no allegations demonstrating permanent dispossession").

12. Ex. F, *Richard Kirsch, DDS v. Aspen American Insurance Co.*, No. 3:20-cv-11930 (E.D. Mich. Dec. 14, 2020) (granting motion to dismiss because "coverage . . . is limited to instances where tangible damage to physical property has occurred").

13. *Robert W. Fountain, Inc. v. Citizens Insurance Co. of America*, No. 20-cv-05441, 2020 WL 7247207 (N.D. Cal. Dec. 9, 2020) (granting motion to dismiss because physical "loss of" property "contemplates that the property is unrecoverable" and therefore temporary restrictions on use were not covered, and plaintiff "cannot convincingly argue that its losses were caused by the March 2020 governmental orders while ignoring that those governmental orders were themselves caused by a virus").

14. *SA Palm Beach LLC v. Certain Underwriters at Lloyd's, London*, No. 9:20-cv-80677, 2020 WL 7251643 (S.D. Fla. Dec. 9, 2020) (granting motion to dismiss because (1) an inability to use property for its intended purpose is not "direct physical loss of or damage to property;" and (2) the orders allowed restaurants to remain open for delivery and takeout service, and therefore did not "prohibit" access as required for civil authority coverage).

15. Ex. G, *Terry Black's Barbeque, LLC v. State Automobile Mutual Insurance Co.*, No. 1:20-cv-665-RP (W.D. Tex. Dec. 14, 2020) (Report and Recommendation recommending granting defendants' motion to dismiss because (1) government orders that temporarily precluded plaintiffs from operating their businesses at full capacity did not constitute "'physical loss' [which] requires there to be some 'distinct, demonstrable, physical alteration of the property,' as opposed to merely economic losses"; (2) plaintiffs' "conclusory allegations" that the COVID-19 virus caused direct physical damage because it could have been present on their properties due to its prevalence in Austin and Dallas, Texas were insufficient and, even if the COVID-19 virus was present, the virus would not would not cause such damage because "[t]he virus does not threaten the structures covered by property insurance policies, and can be removed with routine cleaning and disinfectant"; and (3) civil authority coverage did not apply because the government orders were not issued as a result of loss of property.

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                               :
10012 HOLDINGS, INC. d/b/a GUY HEPNER,  :
                           Plaintiff,  :
                                               :         20 Civ. 4471 (LGS)
                -against-             :
                                               :        **OPINION AND ORDER**
SENTINEL INSURANCE COMPANY, LTD.,  :
                          Defendant.  :
-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      In this insurance dispute, Plaintiff seeks coverage for business losses allegedly resulting from government restrictions on non-essential businesses during the COVID-19 pandemic. Defendant moves to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted.

## I.    BACKGROUND

      The following facts are taken from the Complaint and are assumed to be true for purposes of this motion. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

      Plaintiff operates an art gallery and dealership in New York City. In 2019, Plaintiff obtained a business property insurance policy (the "Policy") from Defendant. The Policy provides "Business Interruption" coverage for loss of certain income:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

As relevant here, the Policy defines "Business Income" as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred . . . ." The Policy defines "suspension" as "[t]he partial slowdown or complete cessation of your business activities" if "part or all of the 'scheduled premises' is rendered untenantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy." The Policy defines "Covered Causes of Loss" as "risks of direct physical loss," subject to various exclusions and limitations not relevant here.

The Policy also provides "Extra Expense" coverage. Those provisions cover "reasonable and necessary Extra Expense[s] you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises.'" The Policy also provides "Civil Authority" coverage: "This insurance is extended to apply to the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'"

From March 2020 onwards, Plaintiff suspended business operations in accordance with orders issued by the Governor of New York and Mayor of New York City, which limited operations for non-essential businesses during the COVID-19 pandemic (the "Civil Orders"). Plaintiff suffered losses of business and incurred expenses as a result, and requested Defendant to reimburse it under the Policy's "Business Interruption," "Extra Expense" and "Civil Authority" provisions. Defendant refused, and Plaintiff brought this action, asserting claims for breach of contract and declaratory relief.

## II.     STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers, New York*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).  To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Under principles of New York contract interpretation,[1] "the court's initial task is to attempt to ascertain the parties' intent from the language of the insurance contract itself . . . constru[ing] the policy as a whole; all pertinent provisions of the policy should be given meaning, with due regard to the subject matter that is being insured and the purpose of the entire contract."  *Westchester Fire Ins. Co. v. Schorsch*, 129 N.Y.S.3d 67, 74 (1st Dep't 2020) (internal

---

[1] The Policy does not explicitly state what law governs its interpretation and enforcement.  The parties apply New York law in their moving papers.  Accordingly, this decision is based on New York Law.  *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009); *accord PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017).

citation omitted).  Courts must take care not to "make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation."  *Keyspan Gas East Corp. v. Munich Reinsurance Am., Inc.*, 96 N.E.3d 209, 216 (N.Y. 2018).  "[A]n unambiguous policy provision must be accorded its plain and ordinary meaning, and the court may not disregard the plain meaning of the policy's language in order to find an ambiguity where none exists."  *Chiarello ex rel. Chiarello v. Rio*, 59 N.Y.S.3d 129, 131 (2d Dep't 2017) (alteration in original).  "[T]he issue of whether a provision is ambiguous is a question of law," and "focuses on the reasonable expectations of the average insured upon reading the policy."  *Hansard v. Fed. Ins. Co.*, 46 N.Y.S.3d 163, 166 (2d Dep't 2017) (internal quotation marks and citations omitted).

## III.    DISCUSSION

### A.    Business Interruption Coverage

The Policy provides Business Interruption coverage for loss of "Business Income" sustained due to "necessary suspension" of operations, where such suspension is caused by "direct physical loss of or physical damage to property."  "Business Income" is income that Plaintiff would have earned "if no direct physical loss or physical damage had occurred."  The Complaint alleges that the Civil Orders caused a "direct physical loss" of Plaintiff's business premises, thus triggering the Policy's Business Interruption provisions.

New York courts interpreting substantially identical language -- "loss of, damage to, or destruction of property or facilities" -- have found it "limited to losses involving *physical damage to the insured's property*."  *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 751 N.Y.S.2d 4, 8 (1st Dep't 2002) (emphasis added); *see also RSVT Holdings, LLC v. Main St. Am. Assur. Co.*, 25 N.Y.S.3d 712, 714 (3d Dep't 2016) (noting that policy covering "direct physical loss of or damage to" provided coverage only for "direct damage to plaintiffs' property"); *Soc. Life*

4

*Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311, Transcript of Show Cause Hearing at 15 (S.D.N.Y. May 14, 2020), *available at* Dkt. No. 21-5 (in declining to provide business interruption coverage for shutdowns resulting from the Civil Orders, noting "New York law is clear that this kind of business interruption needs some damage to the property to prohibit [a person] from going [there]"); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (applying *Roundabout Theatre* to find no "direct physical loss or damage" of or to the premises, where access was lost due to a government utility shutting off power during hurricane recovery); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (construing New York law and the phrase "direct physical loss or damage" to require that "the interruption in business must be caused by some physical problem with the covered property"); *United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006). In so holding, courts have declined to interpret such language to include "loss of use" of the property under New York law. *Roundabout Theatre*, 751 N.Y.S.2d at 6. Nothing in the Complaint plausibly supports an inference that COVID-19 and the resulting Civil Orders physically damaged Plaintiff's property, regardless of how the public health response to the virus may have affected business conditions for Plaintiff. The Complaint does not state a claim for "loss" of the insured property.

Plaintiff claims the Policy is ambiguous because it covers both "loss of" and "damage to" Covered Property. Plaintiff argues that "loss" and "damage" cannot mean the same thing, as New York law requires contracts to be interpreted to give each term effect. While that principle is true, the term "loss" is unambiguous in this case in light of New York law which interprets such language as not including the "loss of use" alleged by the Complaint. *Id.* at 8; *see also Newman Myers*, 17 F. Supp. 3d at 331 ("The words 'direct' and 'physical,' which modify the

phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.").

Plaintiff argues that *Roundabout Theatre* is factually distinct, claiming that the policy in that case was limited to "property or facilities," including the insured theater building, but that the Policy in this case sweeps more broadly to cover loss of business generally. Plaintiff cites the fact that the Policy covers "Covered Property" rather than "property." As relevant here, "Covered Property" is defined as "Property you own that is used in your business." From that definition, Plaintiff claims that while the Policy includes loss of physical items -- "buildings, structures, fixtures, and the like" -- it also includes "much more," including, presumably, loss of customer access to Plaintiff's premises and concomitant loss of business due to the public health crisis. Plaintiff does not explain, nor does the Policy's plain language support, the conclusion that insurance against loss of "Property you own that is used in your business" encompasses business loss due to the Civil Orders limiting customer access to Plaintiff's business. *See Roundabout Theatre*, 751 N.Y.S.2d at 6; *Newman Myers*, 17 F. Supp. 3d at 331. Instead, the Policy's plain language limits coverage to property that Plaintiff "own[s]" "use[s]" in its business, which must suffer some direct physical harm under controlling state law.

Plaintiff points to the "Coverage" section of the Policy, which states that Defendant "will pay for direct physical loss of or physical damage . . . caused by or resulting from a Covered Cause of Loss." Plaintiff argues that because a "Covered Cause of Loss" includes "risks of direct physical loss," Defendant agreed to cover business lost due to the risk of COVID-19 on Plaintiff's premises. Plaintiff does not explain how this language implicates the Business Interruption provisions cited in the Complaint. This provision only provides coverage for "direct

6

physical loss of or physical damage," which the Complaint does not allege for the reasons given above.

Finally, Plaintiff notes that the Policy is an all-risk policy, under which "losses caused by any fortuitous peril not specifically excluded under the policy will be covered." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006). This argument is unpersuasive because, as described above, the Policy's plain language unambiguously does not cover business lost due to the Civil Orders.

### B.  Extra Expense Coverage

The Policy's "Extra Expense" coverage applies to expenses incurred during a period of restoration of the premises following a "direct physical loss or physical damage to" the covered property. Because, as described above, the Complaint does not allege a direct physical loss, the Complaint fails to state a claim for Extra Expense coverage.

### C.  Civil Authority Coverage

The Policy's "Civil Authority" coverage applies to losses sustained when access to Plaintiff's premises is "prohibited by order of a civil authority *as the direct result of a Covered Cause of Loss* to property in the immediate area" of Plaintiff's premises (emphasis added). A "Covered Cause of Loss" includes "risks of direct physical loss." The relevant questions are whether the Complaint alleges (1) losses sustained because the Civil Orders prohibited access to Plaintiff's premises and (2) that such prohibition was a direct result of a risk of direct physical loss to property in the immediate area of Plaintiff's premises.

The Complaint does not plausibly allege losses under the Civil Authority provisions. The Complaint claims that "a Covered Cause of Loss [a risk of direct physical loss] cause[d] damage to property near the insured premises, the civil authority prohibit[ed] access to property near the

insured premises, and the civil authority action [was] taken in response to dangerous physical conditions."  It is plausible that the risk of COVID-19 being physically present in neighboring properties caused state and local authorities to prohibit access to those properties.  But the Complaint does not allege that these closures of *neighboring* properties "direct[ly] result[ed]" in closure of Plaintiff's *own* premises, as the Civil Authority provisions require.  Instead, the Complaint alleges that Plaintiff was forced to close for the same reason as its neighbors -- the risk of harm to individuals on its own premises due to the pandemic.  Put differently, the Complaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure of Plaintiff's properties; rather, it alleges that closure was the direct result of the risk of COVID-19 at Plaintiff's property.  *See United Air Lines*, 439 F.3d 128, 134–35 (2d Cir. 2006) (denying recovery because nationwide shutdown of airport facilities due to risk of terrorism did not directly result from physical damage to neighboring properties).

Although not necessary for the Court's decision, this conclusion is confirmed by other provisions of the Policy.  First, the Policy excludes coverage for pollutants on Plaintiff's premises.  "Pollutants" are broadly defined as "any . . . material which causes or threatens to cause physical loss, physical damage, impurity to property, unwholesomeness, undesirability . . . loss of use of property, or which threatens human health or welfare."  Second, the Policy excludes coverage for costs associated with any ordinance or law requiring any insured to "monitor, clean up, remove, contain, treat . . . or in any way respond to" to "bacteria or virus."  The Policy thus contains provisions that explicitly exclude coverage for any costs associated with containing the presence of harmful substances similar to COVID-19 on Plaintiff's own premises.  By contrast, the Civil Authority provisions address a factually distinct situation --

8

when some dangerous condition on neighboring premises forces a shutdown of Plaintiff's premises. Construing the "policy as a whole" to "ascertain the parties' intent" and giving "all pertinent provisions of the policy meaning," *Westchester Fire*, 129 N.Y.S.3d at 74, the "average insured" reading the Policy would not have a "reasonable expectation[]" that the Civil Authority provisions' plain language -- which addresses closures due to dangerous conditions on neighboring property -- also encompasses a situation covered elsewhere in the Policy, *i.e.* the presence of harmful substances on the insured's own property, *Hansard*, 46 N.Y.S.3d at 166.

### D. Leave to Replead

Plaintiff seeks leave to amend its Complaint. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Olson v. Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020). Leave to amend also may be denied where the plaintiff "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Leave to amend is denied because the Policy does not provide coverage for the loss Plaintiff suffered.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED with prejudice. The Clerk of Court is respectfully directed to close the motion at Docket Number 19 and the case.

Dated: December 15, 2020
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

# Exhibit C

NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

December 14, 2020

John Randy Sawyer, Esq.
Stark & Stark
P.O. Box 5315
Princeton, NJ 08543-5315
*Counsel for Plaintiff*

Michael Hynes, Esq.
DLA Piper LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, NJ 07078-2704
*Counsel for Defendant*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

Re:  **Boulevard Carroll Entm't Grp., Inc. v Fireman's Fund Ins. Co.**
     **Civil Action No. 20-11771 (SDW) (LDW)**

Counsel:

Before this Court is Defendant Fireman's Fund Insurance Company's ("Defendant") Motion to Dismiss Plaintiff Boulevard Carroll Entertainment Group, Inc.'s ("Plaintiff") Declaratory Judgment Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court having considered the parties' submissions, having reached its decision without oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons discussed below, grants Defendant's motion.

## DISCUSSION

### A. Standard of Review

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v.*

*County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B. <u>Plaintiff Has Failed to State a Claim Upon Which Relief Can be Granted</u>

This Court writes only for the parties and assumes their familiarity with the procedural and factual history of this matter. Plaintiff is a "full-service music production company" with locations in New Jersey, New York, and Maryland. (D.E. 1-1 ¶¶ 2-3.) When the COVID-19 pandemic reached the east coast of the United States in March, 2020, governors of those three states issued emergency orders ("Stay-at-Home Orders") to prevent the spread of the virus, which caused Plaintiff to suffer "substantial loss of business income and related expenses." (*Id.* ¶¶ 4-13.) As a result, Plaintiff sought to recover under a commercial property insurance policy issued by Defendant (the "Policy") which provides coverage for: 1) "direct physical loss or damage to Property Insured caused by or resulting from a covered communicable disease event at a location;" 2) "the actual loss of business income and necessary extra expense . . . due to the necessary suspension of . . . operations during the period of restoration arising from direct physical loss or damage to property at a location;" and 3) "the actual loss of business income and extra expense you sustain due to the necessary suspension of your operations caused by action of civil authority that prohibits access to a location" provided that the prohibition of access "arise[s] from direct physical loss or damage to property . . .." (*Id.* ¶¶ 14-18, Ex. A at 52, 64, 67-68.) The Policy excludes coverage for loss, damage or expense caused "directly or indirectly or resulting from . . . regardless of any other cause or event that contributes concurrently or in any sequence to the loss [from] . . . disease, sickness, any conditions of health, bacteria, or virus." (D.E. 1-1 Ex. A at 53-54.) Defendant denied Plaintiff's claim on April 20, 2020. (D.E. 1-1 ¶ 19, Ex. B.)

Plaintiff then brought suit seeking declaratory judgment that the Policy provides coverage for Plaintiff's business losses and expenses and raising claims for breach of contract and breach of the covenant of good faith and fair dealing.[1] (*See generally* D.E. 1-1.) Defendant moved to dismiss, and all briefing was timely filed. (D.E. 4, 7, 10.)

---

[1] Plaintiff initially filed suit in the Superior Court of New Jersey, Bergen County, and Defendant removed to this Court pursuant to diversity jurisdiction on August 28, 2020. (D.E. 1.) As a federal court sitting in diversity, this Court applies the choice-of-law rules of New Jersey to determine which state law controls. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013); *Shapiro v. Logitech, Inc.*, Civ. No. 17-673, 2019 WL 397989, at *6-7 (D.N.J. Jan. 31, 2019). "New Jersey has adopted the [two-part] 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws." *Maniscalco*, 709 F.3d at 206 (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 459-60 (N.J. 2008)). The first step of the inquiry is to determine whether an actual conflict exists. *See Camp Jaycee*, 962 A.2d at 460 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). "That is done by examining the substance of the potentially

Plaintiff has failed to meet its burden to show that its claim falls "within the basic terms of the insurance policy." *See, e.g. Arthur Anderson LLP v. Fed. Ins. Co.*, 3 A.3d 1279, 1287 (N.J. Super. App. Div. 2010). The Policy unambiguously limits its coverage to physical loss or damage to Plaintiff's commercial property. Each of the coverage provisions Plaintiff relies on specifically require "direct physical loss or damage" to trigger the Policy. (*See* D.E. 1-1 Ex. A at 52, 64, 67-68.) Here, Plaintiff has not alleged any facts that support a showing that its property was physically damaged. Instead, Plaintiff pleads that by forcing him to close his business, the Stay-At-Home Orders caused Plaintiff to lose income and incur expenses. This is not enough. *See, e.g. Mac Property Grp. LLC v. Selective Fire & Cas. Ins. Co.*, Dkt. No. L-02629, Slip Op. at *15-17 (N.J. Super. Ct. Nov. 5, 2020). In addition, the Policy clearly excludes coverage for damage, loss or expense arising from a virus. (D.E. 1-1 Ex. A at 54.) Because the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiff's losses are tied inextricably to that virus and are not covered by the Policy. *See, e.g. Mac Property See, e.g. Mac Property*, Slip Op. at *15-16 (dismissing claims for coverage where policy contained a virus exclusion provision); *N&S Rest., LLC v. Cumberland Mutual Fire Ins. Co.*, Civ. No. 20-5289, 2020 WL 6501722, at *3-4 (D.N.J. Nov. 5, 2020). Although this Court is sympathetic to the very real losses businesses have suffered during this pandemic, it cannot grant Plaintiff the relief it seeks.[2]

## CONCLUSION

Defendant's Motion to Dismiss the Declaratory Judgment Complaint is **GRANTED with prejudice**. An appropriate order follows.

   /s/ Susan D. Wigenton     

**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Parties
         Leda D. Wettre, U.S.M.J.

---

applicable laws to determine whether 'there is a distinction' between them." *Id.* "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." *Lebegern*, 471 F.3d at 428. Although neither party engages in a meaningful choice of law analysis, this Court is satisfied that there is no conflict between the applicable laws of New Jersey, New York or Maryland. As such, this Court will apply New Jersey law.

[2] This Court is not alone in this finding, as numerous other federal courts have reached the same conclusion in suits involving similar policy terms. *See, e.g. N&S Rest.*, 2020 WL 6501722, at 2-4 (D.N.J. Nov. 5, 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, Civ. No. 20-275, 2020 WL 6163142, at *9 (S.D. Ala. Oct. 21, 2020); *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, Civ. No. 20-2939, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, Civ. No. 20-1605-T-30AEP, Slip Op. at *10 (M.D. Fl. Sept. 28, 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, Civ. No. 20-3213, 2020 WL 5525171, at *5 (N.D. Cal. Sept. 14, 2020); *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, Civ. No. 20-907, 2020 WL 5500221, at *6 (S.D. Cal. Sept. 11, 2020); *Turek Enter., Inc. v. State Farm Mut. Auto. Ins.*, Civ. No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020); *10E, LLC v. Travelers Indem. Co. of Conn.*, Civ. No. 20-4418, 2020 WL 5095587, at *4 (C.D. Cal. Aug. 28, 2020); *Malaube, LLC v. Greenwich Ins. Co.*, Civ. No. 20-22615, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020); *Diesel Barbershop v. State Farm Lloyds*, Civ. No. 20-461, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020).

# Exhibit D

IN THE CIRCUIT COURT OF THE 20TH
JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA

CASE NO.:    20-CA-004555

CATLIN DENTAL, P.A.,

          Plaintiff,

v.

THE CINCINNATI INDEMNITY
COMPANY,

          Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS COMPLAINT

**THIS MATTER** came before the Court for a hearing via Zoom telephone and video conference on November 23, 2020, on Defendant's, The Cincinnati Indemnity Company ("Cincinnati"), Motion to Dismiss Complaint and Incorporated Memorandum of Law filed on September 15, 2020 (the "Motion to Dismiss"). Plaintiff, Catlin Dental, P.A. ("Catlin"), filed a Memorandum of Law in Opposition to Defendant's Motion to Dismiss on November 18, 2020 (the "Opposition"). Additionally, Cincinnati filed Notices of Supplemental Authority on November 17 and 20, 2020 and Catlin filed Notices of Filing on September 17 and November 18, 2020 (collectively, the "Notices"). Having reviewed the Motion to Dismiss, the Opposition, the Notices, considered the argument of counsel at the hearing, and analyzed the applicable legal authority, the Court finds that the Motion to Dismiss should be **GRANTED without leave to amend**, for the reasons discussed below.

## BACKGROUND

This action concerns Catlin's request for insurance coverage under a commercial property insurance policy issued by Cincinnati for its alleged loss of business income and extra expense relating to the ongoing COVID-19 pandemic.

Catlin filed its Complaint and Demand for Jury Trial (the "Complaint") against Cincinnati in this Court on July 14, 2020. According to the Complaint, Catlin conducts business as a general dentistry practice located at 4447 Camino Real Way, Fort Myers, FL 33966 (the "Insured Premises"). Catlin entered into an insurance contract with Cincinnati to insure Catlin's business premises under a policy number CAP 507 69 15 (the "Policy").[1] The effective dates of the Policy are from January 2, 2018 to January 2, 2021.

Beginning in or about March 2020, Catlin allegedly sustained a severe business interruption resulting from government executive orders limiting dental offices to only emergency procedures. Specifically, in support of Catlin's contention that it had to limit the scope of its practice, the Complaint references an executive order entered in or about March 2020. Catlin further contends that it sustained "business losses and extra expenses, and related losses resulting from actions taken by civil authorities to stop the human and surface to human spread of the COVID-19 outbreak." *Complaint*, ¶ 15. Catlin alleges that its losses and expenses are covered under the Policy. Cincinnati denied the claim because the loss at issue did not come within the coverage grant of the Policy and because the Policy's "pollutant" exclusion also barred coverage.

---

[1] A copy of the Policy was not attached to the Complaint, but was nevertheless incorporated by reference. *See* Complaint, ¶ 7. Under Florida law, where the terms of a legal document are incorporated by reference into the complaint, the trial court may consider the contents of the document in ruling on a motion to dismiss. *See One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015); *Veal v. Voyager Prop. & Cas. Ins. Co.*, 51 So. 3d 1246, 1249 (Fla. 2d DCA 2011).

The Complaint asserts two causes of action against Cincinnati: breach of contract (Count I) and declaratory judgment (Count II). Regarding Count I, in Catlin's view, Cincinnati breached the Policy by failing to provide coverage under the Policy's Business Income, Extra Expense and Civil Authority provisions. In Count II, Catlin seeks a declaration that "Defendant has erroneously refused to provide all or part of the police [sic] benefits that the Plaintiff is due" as a result of Catlin's alleged business income losses and extra expenses incurred in result to the COVID-19 pandemic. *Complaint*, ¶ 30.

Cincinnati moves to dismiss the Complaint with prejudice as to both counts. In support of its motion, Cincinnati makes four primary arguments. First, Cincinnati argues that Catlin is not entitled to Business Income or Extra Expense coverage because it does not allege any direct physical loss or damage to the Insured Premises, which is required for coverage. Second, Catlin is not entitled to Civil Authority coverage because the Complaint does not allege direct physical loss or damage to other property and does not allege a prohibition of access to the Insured Premises. Third, Cincinnati argues that even if Catlin had alleged direct physical loss, the Policy's "pollutant" exclusion would otherwise apply to bar coverage. Finally, Cincinnati argues that since there has not been a breach of contract and Count II is otherwise subsumed within Count I, then Count II must also be denied. Cincinnati also raises other procedural deficiencies with Count II.

Catlin responds in its Opposition that it has stated actionable claims. Catlin makes three primary arguments. First, Catlin argues that the Complaint sufficiently alleges "loss of or damage to" property. Secondly, Catlin argues that cases involving other types of "contamination" illustrate that there has been "physical loss of or damage to property" in this action. *Opposition*, p. 6. Finally, Catlin argues that the executive order "barred them from normal lawful access to their practice," which shows why Catlin should qualify for Civil Authority coverage. *See id.*, p. 12.

3

## LEGAL STANDARD

Rule 1.140(b) of the Florida Rules of Civil Procedure governs motions to dismiss. "The function of a motion to dismiss a complaint is to raise a question of law as to the sufficiency of the facts alleged to state a cause of action." *Reed v. Sampson*, 349 So. 2d 684 (Fla. 4th DCA 1977). When confronted with a motion to dismiss, a court must determine whether the complaint, as phrased within its four corners, sufficiently states a cause of action whereby relief can be granted. *See Fox v. Professional Wrecker Operators of Fla., Inc.*, 801 So. 2d 175 (Fla. 5th DCA 2001).

Under Florida procedural law, a complaint that simply strings together a series of sentences and paragraphs containing legal conclusions and theories does not establish a claim for relief. *See* Fla. R. Civ. P. 1.110; *see also Barrett v. City of Margate*, 743 So. 2d 1160, 1162–63 (Fla. 4th DCA 1999) ("It is insufficient to plead opinions, theories, legal conclusions or argument."). The complaint must set out the elements and the facts that support the claims so that the court and the defendant can clearly determine what is being alleged. *See id., see also Messana v. Maule Indus.*, 50 So. 2d 874, 876 (Fla. 1951) (a complainant must "plead [a] factual matter sufficient to apprise his adversary of what he is called upon to answer so that the court may, upon proper challenge, determine its legal effect.").

Although the pleading of strict forms of causes of action is no longer required under Florida law, the Florida Supreme Court has nevertheless held that in order for a claim to be legally sufficient, the plaintiff must plead ultimate facts to support each element of the cause of action asserted. *See Eastern Airlines, Inc. v. King*, 557 So. 2d 574 (Fla. 1990); *see also Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490 (Fla. 3d DCA 1994). "Ultimate facts" are those facts "found in that vaguely defined field lying between evidentiary facts on the one side and the primary issue or conclusion of law on the other." *Black v. Rouse*, 587 So. 2d 1359 (Fla. 4th DCA 1991).

4

A pleading is insufficient if contains merely conclusions as opposed to ultimate facts supporting each element of the cause of action. *See Price v. Morgan*, 436 So. 2d 1116 (Fla. 5th DCA 1983).

Similar principles apply in federal courts.[2] Specifically, a complaint that patches together a string of legal conclusions will not survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). If legal conclusions are alleged, they are not deemed true for purposes of a motion to dismiss. *Id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). As the U.S. Supreme Court has long held, "we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Likewise, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).

When considering insurance coverage disputes, courts routinely dismiss complaints for failure to state a claim when a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the claim is not covered. *See, e.g., Zodiac Group, Inc. v. Axis Surplus Ins. Co.*, 542 Fed. App'x 844 (11th Cir. 2013) (affirming dismissal of complaint because the "plain language of the Policy precluded coverage" for the underlying claim); *Cammarota v. Penn-Am. Ins. Co.*, 2017 WL 5956881, at *2 (S.D. Fla. Nov. 13, 2017) (granting motion to dismiss with prejudice "because the Auto Exclusion precludes coverage for the Underlying Claims."); *MJCM, Inc. v. Hartford Cas. Ins. Co.*, 2010 WL 1949585 (M.D. Fla.

---

[2] *See* Author's Comment to Fla. R. Civ. P. 1.110 (noting that "[p]leadings under the Florida Rules are now similar to the Federal Rules."); *see also Carriage Hills Condo., Inc. v. JBH Roofing & Constructors, Inc.*, 109 So. 3d 329, 334 (Fla. 4th DCA 2013) ("Because our [Florida] rules of court procedures were patterned closely after the federal rules, federal cases interpreting comparable provisions are persuasive and routinely looked to for interpretive guidance.").

May 14, 2010) (applying Florida law and granting motion to dismiss with prejudice on breach of contract claim because the underlying lawsuit was not covered under the insurance policy at issue).

## DISCUSSION

This Court is sympathetic to the plight of so many business owners in the wake of the COVID-19 pandemic. But, this Court cannot allow sympathy to cloud its review of the plain meaning of an insurance policy. Insurance companies cannot bear the burden of this crisis where, as here, the Policy does not provide coverage for purely economic losses resulting from the COVID-19 pandemic. Taking as true the facts alleged in the Complaint, and considering such facts in conjunction with the plain language of the Policy, the Court finds that the Motion to Dismiss should be granted and leave to amend the Complaint would be futile.

### I.    The Policy

The Policy provides Business Income, Extra Expense, and Civil Authority coverages to the Insured Premises, subject to its terms, conditions, limitations, exclusions and other provisions. Starting with the Policy's Business Income coverage, the Policy states in pertinent part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical "loss" to property at "premises" which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss….

*Motion to Dismiss*, Policy (attached as Exhibit A) p. CIC00142.

The Policy's Extra Expense coverage also states in pertinent part:

**(2)    Extra Expense**

We will pay "Extra Expense" you incur during the "period of restoration":

**(a)**    To avoid or minimize the "suspension" of business and to continue "operations":

6

**1)**   At the "premises"; or

**2)**   At replacement locations or at temporary locations, including:

    **a)**   Relocation expenses; and

    **b)**   Costs to equip and operate the replacement or temporary locations; or

**(b)**   To minimize the "suspension" of business if you cannot continue "operations".

*See id.*, p. CIC00110.

Additionally, the Policy's Civil Authority coverage states in pertinent part:

**(4)**   **Civil Authority**

We will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur caused by an action of civil authority that prohibits access to the "premises" due to direct physical "loss" to property, other than at the "premises", caused by or resulting from any Covered Cause of Loss.

*See id.*

The term "loss" is defined by the Policy as accidental loss or damage. *See id.*, p. CIC00148.

And a Covered Cause of Loss is defined as "RISKS OF DIRECT PHYSICAL LOSS unless the

'loss' is ..." excluded or limited. *See id.*, p. CIC00098.

## II.   <u>Insurance Contract Interpretation in Florida</u>

Under Florida law, insurance contracts must be construed in accordance with their plain

language. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). Insurance

contracts are to be interpreted and construed in a manner that is "reasonable, practical, sensible,

and just." *Colony Ins. Co. v. Montecito Renaissance, Inc.*, 2011 WL 4529948, *3 (M.D. Fla. Sept.

30, 2011). "[I]f a policy provision is clear and unambiguous, it should be enforced according to

its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings,*

7

*Inc. v. USF&G*, 913 So. 2d 528, 532 (Fla. 2005). Courts should "attempt to construe the contractual language in a manner which gives all the provisions effect." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 739 (Fla. 2002).

A provision is not rendered ambiguous simply because it is complex and requires analysis for application. *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007). Only "when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986). The mere fact that parties argue for different interpretations does not make a policy ambiguous and a court will not construe an insurance policy to reach an absurd result. *Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998).

## III.   **The Complaint Fails to Allege Direct Physical Loss or Damage**

As an initial matter, we are dealing with a property insurance policy in this action. Turning first to the Business Income coverage argument, Catlin argues that the Motion to Dismiss should be denied because COVID-19 particles existed in the air and the risk of the COVID-19 pandemic outweighed continued operations. But, Catlin did not identify any actual presence of the virus at the Insured Premises or resulting damage.

The Court is in agreement with the cases cited by Cincinnati in its motion and by its counsel during the November 23 hearing that there needs to be a distinct, demonstrable, physical alteration of the structural integrity of the property in order to have direct physical loss or damage to the property. Airborne particles and the mere presence of a virus in the community do not constitute direct physical loss to the property. *See, e.g., DAB Dental PLLC d/b/a Sunshine Dentistry v. Main*

8

*Street Am. Protection Ins. Co.,* No. 20-CA-5504 (Fla. Cir. Ct., Hillsborough Cty. Nov. 10, 2020)

(Florida law "reflect[s] that actual, concrete damage is necessary." (citation omitted); *Dime Fitness, LLC d/b/a Anytime Fitness v. Markel Ins. Co.,* No. 20-CA-5467 (Fla. Cir. Ct., Hillsborough Cty. Nov. 10, 2020) ("Plaintiff does not allege a direct physical loss); *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, 2020 WL 6392841, at \*8 (S.D. Fla. Nov. 2, 2020) ("The Complaint does not allege any physical harm to Plaintiffs' Covered Property much less 'direct physical loss of or physical damage' caused by or resulting from a 'Covered Cause of Loss.'"); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV-WILLIAMS/TORRES, 2020 WL 5051581, at \*5-7 (S.D. Fla. Aug. 26, 2020) ("courts in our district have found that "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.' ... Plaintiff only alleges that two Florida Emergency Orders forced the closure of its restaurant. And, as stated earlier, courts have found this to be insufficient to state a claim because there must be some allegation of actual harm.") (citation omitted); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*, No. 8:20-cv-1605-T-30AEP, 2020 WL 5791583, at \*3-5 (M.D. Fla. Sept. 28, 2020) ("Plaintiff argues that economic damage is synonymous with 'physical loss' and is therefore covered under the Policies. Plaintiff's argument is unpersuasive because Florida law and the plain language of the Policies reflect that actual, concrete damage is necessary.... Significantly, Plaintiff is not the first insured to seek coverage due to COVID-19 government shutdown orders under a policy that limits coverage to losses caused by direct physical loss or damage to the property. Courts across the country have held that such coverage does not exist where, as here,

9

policyholders fail to plead facts showing physical property damage.... there is simply no coverage under the policies if they require 'direct physical loss of or damage' to property.").

Catlin relies upon the opinions from *Studio 417, Inc. v. The Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo., Aug. 12, 2020) and *North State Deli, LLC v. The Cincinnati Ins. Co.,* No. 20-CVS-02569, 2020 WL 6281508 (N.C. Super. Durham Cty., Oct. 10, 2020) in support of its argument that the allegations in the Complaint command a different result. However, the Court disagrees. Not only are these cases from jurisdictions outside of this State and do not apply Florida law, the Court finds that neither of these cases is persuasive or well-reasoned.

Catlin further argues that it incurred extra expense in the form of extra expense to decontaminate its business. However, Catlin does not allege any facts to support a finding that COVID-19 was present at the Insured Premises. Additionally, Cincinnati correctly argues that under Florida law, if the property can be cleaned, it has not sustained direct physical loss or damage. *See Malalube, LLC*, 2020 WL 5051581, *8 (citing *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974 (S.D. Fla. June 11, 2018), *aff'd*, 2020 WL 4782369 (11th Cir. Aug. 18, 2020) (the plaintiff in *Mama Jo's* failed to put forth any evidence that his cleaning claim constituted a direct physical loss); *Infinity Exhibits*, 2020 WL 5791583, at *4 (citing *Malaube*, 2020 WL 5051581, at *8) ("[T]he action should be dismissed because the policy required direct physical loss or property damage and plaintiff had alleged 'merely [ ] economic losses—not anything tangible, actual, or physical.'").

The Coronavirus does not physically alter the appearance, shape, color, structure or other material dimension of property. Even if Catlin had alleged the virus to be present at the Insured Premises, this would be insufficient. *See, e.g., Uncork & Create, LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-00401, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020) ("[E]ven when present,

10

COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered 'loss' is required to invoke the additional coverage for loss of business income under the Policy."). Therefore, there is no direct physical loss triggering coverage under the Policy's Business Income coverage or Extra Expense coverage.

## IV.    **Civil Authority Coverage**

Turning next to the issue of Civil Authority coverage, the Court again, states that there does not appear to be any direct physical loss or damage to property as outlined earlier. For the same reasons, no direct physical loss or damage to other property is alleged. This is required under the Policy's Civil Authority coverage. Additionally, there was no prohibition of access to the Insured Premises. It was only limited. To the extent that Catlin's business operations were limited, it could still supply emergency services. Thus, it wasn't prohibited from conducting all services.

Catlin argues that the Motion to Dismiss should be denied because COVID-19 particles existed in the air and the risk of the COVID-19 pandemic outweighed continued operations. Catlin further relies upon *Studio 417* by arguing that the Policy does not specify what degree of access must be prohibited. Neither of these arguments are persuasive.

The allegations of the Complaint demonstrate that multiple factors required for Civil Authority coverage remain unmet. Thus, the Court finds that Catlin's claim does not fall within the Civil Authority coverage provisions under the Policy. This Court's analysis matches that of a growing body of persuasive cases addressing economic loss as a result of the COVID-19

pandemic, and the governmental directives aimed at slowing its spread. *See generally Nahmad, Malaube, Infinity, DAB Dental, Dime Fitness.*

## V.     The "Pollutant" Exclusion

In addition to a lack of direct physical loss or damage, Cincinnati argues that even if the Policy's insuring agreements for Business Income, Extra Expense or Civil Authority coverages had been implicated by the allegations in the Complaint, the Policy's "pollutant" exclusion would apply to bar coverage for Catlin's claims.   The Court is unaware of any cases applying the "pollutant" exclusion to a claim relating to COVID-19.   Nevertheless, the Court need not reach the merits of this exclusion because it finds that the Policy's insuring agreements have not been triggered.[3]

## VI.    Count II is Duplicative of, and Subsumed by, Count I

In Count II of the Complaint, Catlin seeks a declaratory judgment that there is coverage for its alleged losses under the Policy. Florida Statute § 86.011 confers trial courts with discretionary jurisdiction to grant declaratory relief.   The courts in Florida routinely dismiss declaratory judgment claims that are superfluous because other claims raised in the same complaint will resolve all of the same disputed issues. *See, e.g., McIntosh v. Harbour Club Villas Condo. Ass'n*, 468 So. 2d 1075, 1081 (Fla. 3d DCA 1985) *Kies v. Fla. Ins. Guar. Ass'n*, 435 So. 2d 410, 411 (Fla. 5th DCA 1983); *Taylor v. Cooper*, 60 So. 2d 534, 535 (Fla. 1952).   Additionally, the courts are accorded wide discretion under Fla. Stat. § 86.011 regarding their decision to decline jurisdiction to entertain a declaratory judgment proceeding. *See Kelner v. Woody*, 399 So. 2d 35, 37 (Fla. 3d DCA 1981).

---

[3] The Court is not denying the motion to dismiss as it relates to the "pollutant" exclusion coverage.

Here, the Court finds that Count II of the Complaint is subsumed under Count I, a breach of contract action. The Court is not willing to grant discretion to allow the declaratory action to continue when it is granting the Motion to Dismiss on Count I of the Complaint, for the reasons discussed above. Accordingly, Count II is dismissed as well.

## CONCLUSION

After thorough review and careful consideration of the parties' submissions, argument of counsel, and review of state and federal court cases in Florida and other states, the Court finds that the Motion to Dismiss is **GRANTED**. The primary basis for the Court's ruling is that there needs to be a distinct, demonstrable, physical alteration to the structural integrity of property and that has not occurred, nor does the Court believe it can be alleged. The Court further finds that any attempt to amend the pleadings would be futile.

It is therefore **ORDERED AND ADJUDGED** that:

1.      The Cincinnati Indemnity Company's Motion to Dismiss Complaint and Incorporated Memorandum of Law is **GRANTED**.

2.      Plaintiff's Complaint and Demand for Jury Trial is **DISMISSED without leave to amend.**

3.      Plaintiff shall go hence without day.

**DONE and ORDERED** in Lee County, Florida.

_James A. Shenko_
Signed by James Shenko 12/11/2020 17:53:48 eXMcSQ4Q

Electronic Service List
Carlos J Cavenago III <service@parveyfrankel.com>
Carlos J Cavenago III <Carlos@parveyfrankel.com>
Carlos J Cavenago III <Leah@parveyfrankel.com>
Jason M Chodos <chodos@litchfieldcavo.com>
Collin D Jackson <jackson@litchfieldcavo.com>

# Exhibit E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN EWC, INC., et al., | Case No. 20-cv-04434-JSC |
| Plaintiffs, | |
| v. | **ORDER RE: MOTIONS TO DISMISS** |
| | Re: Dkt. Nos. 32 & 33 |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., et al., | |
| Defendants. | |

This insurance dispute arises from the COVID-19 pandemic and government closure orders issued to stem its spread.  Sentinel Insurance Company, Ltd. ("Sentinel") and Hartford Services Financial Group ("HFSG") move to dismiss Kathy Franklin and Franklin EWC, Inc.'s ("Franklin EWC's") amended complaint on the grounds that Plaintiffs' insurance policy provides no coverage for Plaintiffs' economic losses as a matter of law.[1]  After considering Plaintiffs' amended complaint, the parties' written submissions, developments in the legal landscape involving COVID-19 business interruption coverage, and having had the benefit of oral argument on December 10, 2020, the Court GRANTS Defendants' motions to dismiss Plaintiffs' amended complaint.

## BACKGROUND

The factual background and procedural history of this case are set forth in the Court's September 22, 2020 Order granting Defendants' first motions to dismiss with leave to amend. (Dkt. No. 27.)[2]  At issue are provisions from the "Spectrum Business Owner's Policy No. 21 SBA

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 8 & 12.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers placed at the top of the documents.

RS4714" (the "Policy") Franklin EWC entered into with Sentinel. (Dkt. No. 30 ("FAC") ¶ 3.)
Following this Court's order on Defendants' first motion to dismiss, Plaintiffs filed an amended
complaint. (Dkt. No. 30.) Defendants subsequently filed the instant motions to dismiss, and the
motions are fully briefed. (Dkt. Nos. 32-33, 35-38.)

## DISCUSSION

Sentinel moves to dismiss Plaintiffs' claims on the grounds that the Policy's Virus
Exclusion bars coverage for Plaintiffs' business losses and that Plaintiffs fail to otherwise state
plausible claims for relief.

### A. The Virus Exclusion

The Policy's Special Property Coverage Form provides that the insurer "will pay for direct
physical loss of or physical damage to Covered Property at the premises . . . caused by or resulting
from a Covered Cause of Loss." (Dkt. No. 10-1 at 31.)[3] A "Covered Cause of Loss" is defined as
a "RISK[] OF DIRECT PHYSICAL LOSS" unless the loss is excluded by the Policy's
"Exclusions" section. (*Id.* at 32.) The FAC alleges that the proliferation of coronavirus causes
"direct physical damage and loss" triggering coverage under the Policy. (FAC ¶ 8.) According to
Plaintiffs, recent business closure orders issued pursuant to the State of California's Executive
Order N-33-20 and other public health orders (the "Closure Orders") were issued because "the
[c]oronavirus was proliferating onto virtually every surface and object in, on, and around
commercial premises such as [EWC Fresno], and thereby causing **direct physical damage and**
**loss** in and to the immediate area of such commercial premises[.]" (*Id.* (emphasis in original)
(citing Orders of Napa and Sonoma County Health Officers).)

Sentinel contends that the Policy excludes from its coverage losses caused directly or
indirectly by a virus:

---

[3] The Court may consider the Policy's content under the incorporation by reference doctrine.
*Biltmore Assocs., LLC v. TwinCity Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th Cir. 2009) ("A court
may consider documents, such as the insurance policies, that are incorporated by reference into the
complaint.")

United States District Court
Northern District of California

### i. "Fungi", Wet Rot, Dry Rot, Bacteria And Virus

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

**(1)** Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

(Dkt. No. 10-1 at 127.)

Sentinel has met its burden of showing that the Virus Exclusion applies to the FAC's coverage allegations. *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 321 (9th Cir. 1989) ("[T]he insurer bears the burden of proving . . . the applicability of an exclusion[.]") (citation omitted). The Virus Exclusion's plain and unambiguous language excludes coverage for losses caused directly or indirectly by a virus. The FAC alleges that the coronavirus is a virus (FAC ¶ 5) and that it was "physical[ly] presen[t]" and "proliferat[ed]" onto EWC Fresno's premises. (FAC ¶¶ 9, 19.) The FAC further repeatedly alleges that the coronavirus caused—and continues to cause—the direct risk of physical loss required to establish a Covered Cause of Loss under the Policy. (FAC ¶¶ 8, 19, 49, 61) Therefore, drawing all inferences in the FAC in Plaintiff's favor, *see Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012), the FAC alleges that the coronavirus is the direct or indirect cause of Plaintiffs' economic loss, and thus the Virus Exclusion bars coverage under its plain and unambiguous language, *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-04434-JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020); *see also Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) ("The clear and explicit meaning of the [policy] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage [] controls judicial interpretation.") (internal quotations and citations omitted).

The caselaw addressing COVID-19 business interruption coverage following this Court's

3

United States District Court
Northern District of California

1  prior Order is consistent with the Court's reasoning.  Confronted with the same or similar virus

2  exclusion provisions, numerous courts have determined that these provisions exclude coverage for

3  business losses related to COVID-19.  *See, e.g.*, *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, No.

4  20-CV-04466-VC, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020); *see also Raymond H*

5  *Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, 2020 WL 6392841, at *9 (S.D.

6  Fla. Nov. 2, 2020) ("Assuming for argument's sake that Plaintiffs had alleged facts triggering

7  coverage under the Policy, the virus exclusion would still apply to bar coverage for Plaintiffs'

8  losses."); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, No. 2:20-

9  CV-05663-VAP-DFMx, 2020 WL 6440037, at *6 (C.D. Cal. Oct. 27, 2020) ("[T]he Virus

10  Exclusion precludes coverage [because the complaint] contains multiple admissions that [the

11  plaintiffs'] losses were caused directly or indirectly by a virus[.]"); *Natty Greene's Brewing Co.,*

12  *LLC v. Travelers Cas. Ins. Co. of Am.*, No. 1:20-CV-437, 2020 WL 7024882, at *4 (M.D.N.C.

13  Nov. 30, 2020) ("The policies unambiguously exclude coverage for loss or damage caused directly

14  or indirectly by, or resulting from, any virus.").

15      Plaintiffs' insistence that the Virus Exclusion "relates solely to contamination on the

16  insured premises" and that had Sentinel "intended to exclude risks associated with a pandemic[,]"

17  the Policy could have referred explicitly to these risks or included a specific exclusion "targeted at

18  pandemics (FAC ¶ 78) is unavailing. Nothing in the Virus Exclusion indicates it is limited to

19  viruses arising from the insured premises rather than a pandemic.  Other courts have arrived at

20  similar conclusions.  In *Nahmad*, "[the plaintiffs] offer[ed] no basis for construing 'COVID-19' or

21  the 'pandemic' as a non-virus for purposes of [a virus] exclusion," and the court determined that

22  "they could [not] plausibly do so as the global spread, proliferation, and activity of 'coronavirus'

23  is the underlying pandemic at issue." *Nahmad*, 2020 WL 6392841, at *10.  In *Boxed Foods Co.,*

24  *LLC v. California Capital Ins. Co.*, No. 20-CV-04571-CRB, 2020 WL 6271021, at *5 (N.D. Cal.

25  Oct. 26, 2020), *as amended* (Oct. 27, 2020), the court analyzed a virus exclusion that, like

26  Sentinel's Virus Exclusion, "contemplate[d] situations where a virus indirectly contributes to or

27  worsens a loss."  The *Boxed Foods* court determined that the exclusion's language unambiguously

28  barred coverage for business losses related to the COVID-19 pandemic, because "[e]ven if the

[c]ourt accept[ed] [the plaintiffs'] distinction between a stand-alone virus and a pandemic, only COVID-19 can cause the COVID-19 pandemic and subsequently, civil authority orders and business income losses." *Id.* For this reason "COVID-19 remain[ed] the 'indirect' cause of the insured's harm," and therefore barred the plaintiffs' recovery for economic losses under their policy—notwithstanding the plaintiffs' efforts to characterize the virus exclusion as applying only to stand-alone viruses, not those that "escalate into a pandemic." *Id.*

The Court finds this reasoning persuasive. Contract interpretation is a matter of law, and "[c]ourts [should] not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19 (citation omitted). When interpreting a contract, the parties' mutual intent at the time of formation governs and "[s]uch intent is to be inferred, if possible, *solely* from the written provisions of the contract. *Id.* at 18 (citations omitted) (emphasis added); *see also Roug v. Ohio Sec. Ins. Co.*, 182 Cal. App. 3d 1030, 1035 (1986) ("An insurance policy is but a contract, and, like all other contracts it must be construed from the language used; when the terms are plain and unambiguous, it is the duty of courts to enforce the agreement.").

In sum, the Virus Exclusion applies under its plain and unambiguous language. Plaintiffs' new allegations do not—and cannot—change its clear and explicit meaning. *See AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990).

**B. Regulatory Estoppel**

Plaintiffs allege that the doctrine of regulatory estoppel bars enforcement of the Virus Exclusion. (FAC ¶¶ 79-89.) Fundamentally, Plaintiffs contend that two industry trade groups made false representations to state insurance regulators in 2006 when seeking approval for the Virus Exclusion, and that HFSG represented itself and Sentinel in this effort. (FAC ¶ 80.) According to Plaintiffs, these trade groups, the Insurance Service Office ("ISO") and American Association of Insurance Services ("AAIS"), represented to regulators that the Virus Exclusion was only meant to "clarify" that coverage for "disease-causing agents" had never been in effect and was never intended to be included in policies such as the one between Sentinel and Plaintiffs—that, fundamentally, adopting the Virus Exclusion would not change a policy's scope of coverage. (FAC ¶¶ 80-81, 83, 88.) Plaintiffs allege that state insurance departments relied on

United States District Court
Northern District of California

1  these misrepresentations in approving the Virus Exclusion for inclusion in "standard

2  comprehensive policies."  (*Id.* ¶ 86.)

3        Plaintiffs' regulatory estoppel argument does not save their coverage claim from the Virus

4  Exclusion.  California courts reject the regulatory estoppel doctrine.  *See ACL Techs., Inc. v.*

5  *Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1797 n.39 (1993), *as modified* (Sept.

6  21, 1993) ("Some jurisdictions—but not California—allow extrinsic evidence even where contract

7  terms are unambiguous . . . . [a]nd some jurisdictions have relied on an 'estoppel' or regulatory

8  history rationale not necessarily related to any textual ambiguity."); *see also SnyderGeneral Corp.*

9  *v. Great Am. Ins. Co.*, 928 F. Supp. 674, 682 (N.D. Tex. 1996), *aff'd sub nom. SnyderGeneral*

10  *Corp. v. Cont'l Ins. Co.*, 133 F.3d 373 (5th Cir. 1998) ("The regulatory estoppel argument has

11  been rejected by virtually every other state and federal court to address the issue.") (citing *ACL*

12  *Technologies*, 17 Cal. App. 4th 1773).  Plaintiffs cite *Sunbeam Corp. v. Liberty Mutual Insurance*

13  *Co.*, 781 A.2d 1189, 1192-93 (Pa. 2001), for the proposition that they should be allowed to present

14  factual evidence in support of their regulatory estoppel claim.  (Dkt. No. 36 at 22.)  However,

15  *Sunbeam* was decided by the Pennsylvania Supreme Court and carries no weight in California

16  where the doctrine of regulatory estoppel is not recognized.  Plaintiffs' citation to *Cooper v.*

17  *Travelers Indem. Co. of Illinois*, No. C-01-2400-VRW, 2002 WL 32775680, at *5 (N.D. Cal. Nov.

18  4, 2002), fares no better.  While *Cooper* applied California law, it did not concern the doctrine of

19  regulatory estoppel; Plaintiffs cite *Cooper* for the proposition that, at the time of regulatory

20  approval, ISO and AAIS were allegedly aware that insurance policies had been interpreted to

21  cover claims for property damage from disease-causing agents.  *See Cooper*, 2002 WL 32775680,

22  at *3-5.  Thus, *Cooper* does not support Plaintiffs' argument that the doctrine of regulatory

23  estoppel bars enforcement of the Virus Exclusion.

24        The *Boxed Foods* court rejected a similar argument that ISO misled state regulators

25  regarding the scope of its virus exclusion provision to secure the exclusion's approval—and that

26  these alleged misrepresentations evinced the virus exclusion at issue did not bar recovery for the

27  plaintiffs' economic losses—because "[e]ven if ISO mispresented the purpose and scope of its

28  [v]irus [e]xclusion [provision], [p]laintiffs' theory [would] require[] the [c]ourt to construe [the

defendant's] plain, unambiguous Virus Exclusion to mean the exact opposite of its ordinary meaning." *Boxed Foods*, 2020 WL 6271021, at *6. The Court likewise declines to depart from the "rules of insurance contract interpretation [that] clearly require a showing of ambiguity before extrinsic evidence may be admitted to shed light on that ambiguity[,]" *ACL Technologies*, 17 Cal. App. 4th at 1790-91, and, as such, finds Plaintiffs' allegations regarding ISO's conduct are of no moment in its analysis of the unambiguous Virus Exclusion's application to Plaintiffs' claims and business losses.

### C. Limited Virus Provision

Plaintiffs argue in the alternative that, even if the Virus Exclusion bars their claims, they are entitled to coverage under the Policy's Limited Virus exception to the Virus Exclusion. The Policy provides "LIMITED FUNGI, BACTERIA, OR VIRUS COVERAGE" up to $50,000 that applies where fungi, wet and dry rot, bacteria or a virus is the result of one or more "specified cause of loss" elsewhere defined as: "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." (Dkt. No. 10-1 at 55, 128).

Plaintiffs have not met their burden of showing that their business losses are covered under the Policy's Limited Virus provision. *See Aydin Corp. v. First State Ins. Co*., 18 Cal. 4th 1183, 1188 (1998), *as modified on denial of reh'g* (Oct. 14, 1998). They do not allege that the virus was caused by any specified cause of loss, only that the requirement is impossible to satisfy and thus "renders the Limited Virus Coverage illusory." (FAC ¶ 113; Dkt. No. 36 at 13.) The FAC alleges that viruses do not result from any "specified cause of loss" as defined in the Policy, and instead that they emerge from evolutionary processes involving genetic mutations in cells. (FAC ¶ 34; Dkt. No. 36 at 14.) Plaintiffs contend that—unlike other agents covered by the Limited Virus provision, such as fungi, wet and dry rot, and bacteria—viruses cannot reproduce without access to living cells. Therefore, losses caused by a virus cannot be covered by the Limited Virus provision because its "specified cause[s] of loss" are "extracellular" and incapable of causing a virus. For these reasons, Plaintiffs conclude, the Limited Virus provision's "specified cause of

United States District Court
Northern District of California

7

1   loss" requirement renders coverage under the provision for virus-related losses illusory, or

2   virtually illusory, and the "specified cause of loss" requirement is unenforceable.  (Dkt. No. 36 at

3   16.)

4           Plaintiffs' assertion that a virus could never be caused directly or indirectly by any of the

5   specified causes of loss is not plausible.  *Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of*

6   *Nebraska*, 528 N.W.2d 329 (Neb. 1995), is instructive.  In *Curtis*, the Supreme Court of Nebraska

7   determined that a tornado carried a pseudorabies virus to the plaintiff's swine "insured by

8   defendant insurance company for physical loss caused directly by an applicable peril," where

9   windstorms were covered perils under the policy.  *Id.* at 331.  The court determined that the virus

10  "ha[d] been transmitted by means of a covered peril" and that "[a]bsent the windstorm, there

11  would have been no infection of plaintiff's swine."  *Id.* at 333.  Plaintiffs' attempt to distinguish

12  *Curtis* based on the defendant not having contested that the windstorm transmitted the virus to the

13  swine, *id.* at 331, does not save their argument.  The court explained that "where a virus has been

14  transmitted by means of a covered peril, the covered peril has been held to be the proximate cause

15  of the loss."  *Id.* at 333 (citing *Qualls v. Farm Bureau Mut. Ins. Co.*, 184 N.W.2d 710, 713 (Iowa

16  1971)). Plaintiffs do not allege that none of the specified covered causes of loss could transmit a

17  virus; thus, *Curtis* demonstrates that the limited virus coverage is not illusory.

18          However, even without *Curtis*'s illustration that it is not factually impossible for a virus to

19  be caused by a "specified cause of loss," an insurance policy provision is only illusory where it

20  results in a "complete lack of any policy coverage."  *Secard Pools, Inc. v. Kinsale Ins. Co.*, 318 F.

21  Supp. 3d 1147, 1153 (C.D. Cal. 2017), *aff'd sub nom. Secard Pools Inc v. Kinsale Ins. Co.*, 732 F.

22  App'x 616 (9th Cir. 2018);  *see also Young v. Illinois Union Ins. Co.*, No. C07-05711SBA, 2008

23  WL 5234052, at *1 (N.D. Cal. Dec. 15, 2008), *aff'd*, 366 F. App'x 777 (9th Cir. 2010) (stating that

24  "[i]n order for a policy to be deemed illusory, it must afford no coverage whatsoever" and a

25  disputed policy exclusion "d[id] not render the policy illusory"); *Scottsdale Ins. Co. v. Essex Ins.*

26  *Co.*, 98 Cal. App. 4th 86, 95 (2002) ("An agreement is illusory and there is no valid contract when

27  one of the parties assumes *no* obligation") (citation omitted) (emphasis added); *Medill v. Westport*

28  *Ins. Corp.*, 143 Cal. App. 4th 819, 836 (2006) (finding that insurance policy's exclusion did not

United States District Court
Northern District of California

1    render coverage illusory where "not every lawsuit that could conceivably be brought against the

2    [insured] would necessarily arise out of [the exclusion]"). "[T]he mere *possibility* of *some*

3    coverage is enough" to defeat Plaintiffs' argument that coverage under the Limited Virus

4    provision is illusory, *Secard Pools*, 318 F. Supp. 3d at 1153 (original emphasis), and here the

5    provision provides "the possibility of some coverage that is not excluded," *Crusader Ins. Co. v.*

6    *Burlington Ins. Co.*, No. CV 1905371 PSG (PLAx), 2020 WL 4919387, at *10 (C.D. Cal. June 12,

7    2020).

8          As such, Plaintiffs have not met their burden of showing the Limited Virus provision

9    affords no possibility of coverage, *see Secard Pools*, 318 F. Supp. 3d at 1153, and have therefore

10    failed to show the provision, including its "specified cause of loss" requirement, is illusory.[4]

11          Plaintiffs additionally argue that the "specified cause of loss" requirement is unenforceable

12    because it violates the reasonable expectation of having "some" Limited Virus Coverage. (Dkt.

13    No. 36 at 17.) Under Plaintiffs' theory, the Policy's introductory declarations give no indication

14    that the Limited Virus provision's scope is "virtually non-existent" based on its "specified cause

15    of loss" requirement, and the declarations' indication that the Limited Virus provision provides

16    coverage up to $50,000 "provided [Plaintiffs] with a reasonable expectation that there would be a

17    reasonable number of factual scenarios" in which there would be limited coverage under the

18    Policy for virus-caused losses. (*Id.* at 20.)

19          However, "courts do not evaluate the reasonable expectations doctrine when a policy's

---

[4] Plaintiffs aver that the Limited Virus provision is unenforceable under California law because it is "virtually illusory." (Dkt. No. 36 at 16.) Plaintiffs' cases cited in support of this proposition, however, are inapposite. *Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 756 (2005), *as modified* (May 5, 2005), concerned damage from a landslide, California Insurance Code § 530, and the "efficient proximate cause doctrine." The *Julian* court expressed concern over "virtually illusory" insurance provisions where "insurers[] attempt[ed] to contract around the proximate cause doctrine through sweeping language that would have rendered the policies' coverage terms virtually illusory." *Id.* Similarly, *Howell v. State Farm Fire & Cas. Co.*, 218 Cal. App. 3d 1446 (1990), *disapproved of on other grounds by Reid v. Google, Inc.*, 50 Cal. 4th 512 (2010), concerned landslide-related damage and section 530's requirement that an insurer "provide coverage whenever an insured peril is the 'efficient proximate cause' of the loss.'" *Id.* at 1452 (citation omitted). In this context, the *Howell* court reasoned, "giv[ing] full effect" to policy language that "exclud[ed] coverage whenever an excluded peril [was] a contributing or aggravating factor in the loss" would give insurers "carte blanche" to deny coverage." *Id.* at 1456 n.6. These cases are factually distinguishable and were decided regarding—and in the context of—a different legal doctrine.

9

language is clear and unambiguous." *Boxed Foods Co., LLC*, 2020 WL 6271021, at \*5 (collecting cases). Here, the Limited Virus provision is clear: when a virus is caused by a specified cause of loss defined in the Policy, the insured party may receive up to $50,000 in coverage. (Dkt. No. 10-1 at 55, 128). Moreover, accepting Plaintiffs' theory would render the Limited Virus provision a nullity. If every insured person's expectations for coverage were defined by policies' brief, prefatory declarations, any additional policy provisions would be "unenforceable." Not so. "An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Nat'l Ins. Underwriters v. Carter*, 17 Cal. 3d 380, 386 (1976) (internal quotations and citation omitted). Because the Limited Virus provision is unambiguous the reasonable expectations doctrine does not apply, *see Boxed Foods*, 2020 WL 6271021, at \*5, and the Court must respect the provision's plain language, *see National Insurance*, 17 Cal. 3d at 386.

\* \* \*

Plaintiffs' contract-based claims for breach of contract, breach of covenant of good faith and fair dealing, and bad faith denial of an insurance claim are dismissed as to both defendants. Drawing all reasonable inferences from the complaint's allegations in Plaintiffs' favor, *see Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012), the Virus Exclusion applies as a matter of law. Plaintiffs' UCL claims are likewise predicated on the Policy, and are therefore likewise dismissed. Because the unambiguous Virus Exclusion applies, the FAC's claim for declaratory relief must be dismissed with prejudice. *See Osseous Techs. of Am., Inc. v. DiscoveryOrtho Partners LLC*, 191 Cal. App. 4th 357, 365 (2010) ("Declaratory relief pursuant to [Cal. Civ. Proc. § 1060] has frequently been used as a means of settling *controversies* between parties to a contract regarding the nature of their contractual rights and obligations.") (internal quotation marks and citations omitted) (emphasis added); *Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App. 4th 1559, 1582 (2011) ("To qualify for declaratory relief . . . [a party] must [] present an *actual controversy*[.]") (internal quotation marks omitted and emphasis added) (citing Cal. Civ. Proc. § 1060); *Brownfield v. Daniel Freeman Marina Hosp.*, 208 Cal. App. 3d 405, 410 (1989) ("[Section 1060's] 'actual controversy' requirement concerns the

existence of *present* controversy relating to the legal rights and duties of the respective parties pursuant to contract[.]") (original emphasis).

### C. Fraud-Based Claims

Plaintiffs' claim for fraudulent misrepresentation fails the heightened pleading standard for fraud claims. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (citation omitted). The FAC alleges that Defendants made affirmative misrepresentations regarding the Policy's scope of coverage for business interruption losses and its Limited Virus provision, "facts surrounding Plaintiffs' regulatory estoppel argument," and that Defendants "concealed" from Plaintiffs that they would not pay any claims during a pandemic or under the Limited Virus provision. (FAC ¶ 119.) It is unclear, however, where, when, or how these misrepresentations were made, or by whom. *See Vess*, 317 F.3d at 1106. It is also unclear when, where, or how Defendants made false or misleading statements when they sold Plaintiffs the Policy. (FAC ¶ 120.) At oral argument, Plaintiffs conceded that there is no proof of when, where, or how specific, fraudulent representations were made to Ms. Franklin that could satisfy Rule 9(b)'s heightened standard; instead, Plaintiffs rely on the theory that Sentinel made implicit misrepresentations by selling the Policy that did not provide "full coverage for business interruption" or would not "pay any claims during a pandemic." (FAC ¶ 119.) This theory does not satisfy the heightened pleading standard. *See Vess*, 317 F.3d at 1106.

Plaintiffs' constructive fraud claim fails for substantially the same reason. Constructive fraud claims are subject to the particularity requirement under Federal Rule of Civil Procedure 9(b). *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 667–68 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019). Therefore, Plaintiffs must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false" to make out a claim for constructive fraud. *Id.* at 668 (internal quotation marks and citation omitted). Plaintiffs' conclusory allegations that Defendants owed Plaintiffs fiduciary and quasi-fiduciary duties, as well as that Defendants took "unfair advantage" of Plaintiffs, do not meet Rule 9(b)'s standard, nor can any allegations motivating the fraudulent

United States District Court
Northern District of California

11

1    misrepresentation claim sustain a claim for constructive fraud.  (FAC ¶¶ 127-28.)

2           The FAC's allegations are insufficient to support Plaintiffs' fraud-based claims.  For this

3    reason, and given Plaintiffs' statements at oral argument, the fraud-based claims are dismissed

4    with prejudice as to both defendants.

5                                          **CONCLUSION**

6           For the reasons set forth above, the Court GRANTS Sentinel's and HFSG's motions to

7    dismiss.  Plaintiffs' claims against Sentinel and HFSG for breach of contract, breach of covenant

8    of good faith and fair dealing, bad faith denial of an insurance claim, violations of the UCL, and

9    declaratory relief are dismissed with prejudice. Given the Virus Exclusion's and Limited Virus

10   provision's plain and unambiguous language, leave to amend would be futile.  Because at oral

11   argument Plaintiffs failed to articulate any facts on which the fraud-based claims could satisfy the

12   heightened pleading standard, Plaintiffs' fraud-based claims are likewise dismissed with prejudice.

13   Judgment must be entered in favor of Defendants and against Plaintiff.

14          This Order disposes of Dkt. Nos. 32 & 33.

15          **IT IS SO ORDERED.**

16   Dated: December 14, 2020

17

18

19                                             _____
                                               JACQUELINE SCOTT CORLEY
                                               United States Magistrate Judge

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# Exhibit F

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD KIRSCH, DDS,

     Plaintiff,

v.                                 Case No. 20-11930

ASPEN AMERICAN INSURANCE COMPANY,

     Defendant.

_____/

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff Richard Kirsch, DDS, the owner of a Dearborn Heights dental practice, filed a complaint against Defendant Aspen American Insurance on behalf of himself and all others similarly situated. Plaintiff alleges that Defendant breached the provisions of an insurance contract when Defendant refused to pay Plaintiff's claim for loss of income and extra expenses. The claim stems from a Michigan executive order that suspended all non-emergency dental procedures for approximately two months in an attempt to slow the spread of Coronavirus Disease ("COVID-19"). Plaintiff seeks damages for breach of contract as well as a declaratory judgment that the insurance contract covers the loss of income and extra expense incurred by Plaintiff and all others similarly situated. Defendant now moves to dismiss the complaint for failure to state a claim on which relief can be granted. The motion has been fully briefed. Upon review of the parties' filings, the court concludes that a hearing is not necessary. *See* E.D. Mich. LR

7.1(f)(2). For the reasons stated below, the motion to dismiss will be granted, and the complaint will be dismissed with prejudice.

## I. BACKGROUND

The following facts are drawn from the complaint and the documents attached thereto. Plaintiff Richard Kirsch, DDS, owns a dental practice in Dearborn Heights Michigan. (ECF No. 1-2, PageID.22.) Plaintiff purchased a "Building, Blanket Dental Practice Personal Property and Income Coverage" policy ("the policy") from Defendant Aspen American Insurance Company that was in effect during the spring of 2020. (*Id.* at 22, 24.)

Like most businesses, Plaintiff's dental practice was detrimentally affected when Michigan's Governor, Gretchen Whitmer, issued Executive Order 2020-17 ("the executive order") on March 23, 2020 aimed at slowing the spread of COVID-19. In what amounted to a stay of "excavation" for cavities throughout the state, the executive order required that dental facilities suspend all non-essential procedures. (*Id.* at 23.) As a result of this order, Plaintiff alleges that "use of the Dearborn Heights building for dental activities was suspended for more than two months" until a subsequent May 26, 2020 order was issued that allowed the resumption of non-emergency dental procedures. (*Id.* at 24.) The complaint does not allege any of the COVID-19 virus was present in the dental practice at the time of, or during, the mandated shutdown.

Plaintiff sought coverage for a loss of practice income under various provisions of the insurance policy issued by Defendant. (*Id.*) But Defendant denied coverage, and Plaintiff filed suit for breach of contract and declaratory relief in Wayne County Circuit

2

Court.[1] (*See* ECF No. 1-2.) As a Texas corporation with a principal place of business in Connecticut, Defendant removed the action to federal court based on diversity jurisdiction under 28 U.S.C. § 1332 and Defendant alleges that the amount in controversy exceeds $75,000. (*See* ECF No. 1.)

Plaintiff and Defendant agree that their dispute is governed by the terms of a valid property insurance policy purchased by Plaintiff. The policy is attached to the initial complaint. (*See* ECF No. 1-2, PageID.33-161.) Based on the language of the policy limiting coverage for lost business income resulting from "direct physical damage" to property, Defendant moves to dismiss the lawsuit. (*See* ECF No. 12.)

### III. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of

---

[1] Plaintiff's complaint also seeks to establish a class of other similarly situated dental practices throughout the state that purchased insurance from Defendant. (ECF No. 1-2, PageID.26) The issue of class certification is irrelevant to the present motion.

action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### IV. DISCUSSION

Both sides agree that the present dispute is essentially limited to the proper interpretation of the insurance policy at issue under Michigan law. (ECF No.12, PageID.268; ECF No.16, PageID.364.) In Michigan "an insurance contract must be enforced in accordance with its terms." *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 596 N.W.2d 190, 193 (1999). "Terms in an insurance policy must be given

their plain meaning and the court cannot create an ambiguity where none exists."

*Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 534 N.W.2d 502, 505 (1995)

(internal quotation marks omitted). The plain and ordinary meaning of undefined

contract terms "may be determined by consulting dictionaries." *McGrath v. Allstate Ins.

Co.*, 290 Mich. App. 434, 439, 802 N.W.2d 619, 622 (2010) (citations omitted).

Michigan defines "an ambiguity in an insurance policy to include contract

provisions capable of conflicting interpretations." *Auto Club Ins. Ass'n v. DeLaGarza*,

433 Mich. 208, 444 N.W.2d 803, 805 (1989). Ambiguous terms "are construed against

its drafter and in favor of coverage." *Id.* at 806.

"Michigan courts engage in a two-step analysis when determining coverage

under an insurance policy: (1) whether the general insuring agreements cover the loss

and, if so, (2) whether an exclusion negates coverage." *K.V.G. Properties, Inc. v.

Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018) (citing *Auto-Owners Ins. Co. v.

Harrington*, 455 Mich. 377, 565 N.W.2d 839, 841 (1997)). A policy provision, such as an

exclusion, is valid "as long as it is clear, unambiguous and not in contravention of public

policy." *Harrington*, 565 N.W.2d at 841 (internal quotation marks omitted).

### A. The Property Insurance Policy

In its "Coverage Agreements" (Section I), the policy explains that it covers "all

*direct physical damage to covered property* at the premises described on the

Declarations caused by or resulting from any covered cause of loss." (ECF No. 1-2,

PageID.140 (emphasis added).) The policy also contains "limits on insurance" (Section

II) and exclusions (Section III). In Section I, the policy explains it will cover losses in six

categories, including: the building, dental practice personal property, practice income,

5

extra expenses, extended practice income, and lost rent. (*Id.* at 140-43.) The practice

income provision explains the policy:

> will pay for the actual loss of practice income you sustain, or the Valued Daily
> Limit, as described under Limits of Insurance provision III.E.6., due to the
> necessary suspension of your practice during the period of restoration. The
> suspension must be caused by *direct physical damage to the building or blanket
> dental practice personal property* at the described premises caused by or
> resulting from a covered cause of loss or power failure as described under.

(*Id.* at 142. (emphasis added).) A "civil authority" clause expands the practice income

coverage to include:

> [an] actual loss of practice income and rents you sustain caused by action of civil
> authority that prohibits access to the described premises *due to the direct
> physical damage to property*, other than at the described premises, caused by or
> resulting from any covered cause of loss. . . up to 30 consecutive days. . .

(*Id.* at 146 (emphasis added)).

Further, the policy's "extra expense" provision adds coverage for additional "expenses

necessarily incurred by you during the period of restoration to continue normal services

and operations which are interrupted due to damage." (*Id.* at 143.) But the policy states:

> [it] will only pay for extra expenses that you incur within 12 consecutive months
> after the date of *direct physical damage* or power failure as described under
> Paragraph I.B.8.

(*Id.*) (emphasis added.)

The final part of the policy (Section IV) offers definitions for different terms

including "damages" and "covered cause of loss."

> "Damage" means partial or total loss of or damage to your covered property.
> . . .
> "Covered Causes of Loss" means ALL RISK OF DIRECT PHYSICAL LOSS
> except as excluded or limited in Section II, of this Coverage Part. ALL RISK OF
> DIRECT PHYSICAL LOSS shall also include the following: [Collapse and Water
> Damage]

(*Id.* at 158.) The policy contains no specific exclusions or definitions dealing specifically

with viruses.

### 1. Practice Income Provision

Defendant moves to dismiss the present action, arguing Plaintiff has failed to establish that the executive order resulted in "direct physical damage to property" as the policy requires for a claim. (ECF No. 12, PageID.260.) Defendant argues that because the executive order's restriction on dental procedures did not cause "tangible or discernible property loss or damage," the policy's lost practice income provision was not implicated. (*Id.* at 264.)

Plaintiff responds by arguing that "tangible physical damage is not a prerequisite to coverage" under the lost income provision. (ECF No. 16, PageID.365.) In support, Plaintiff focuses on the policy's broad definition of "damage" which is defined to include "partial or total loss of or damage to" covered property. (*Id.* at 368.) Plaintiff further argues that if the phrase "loss of" in the definition is read to require "tangible, physical damage" then the word *loss* would be "strip[ped] of its plain and ordinary meaning" and be rendered "superfluous" to the ordinary definition of "damage." (*Id.*)

The court concludes that Defendant's interpretation is largely correct. As a leading treatise on property insurance—cited by the Sixth Circuit—explains, usually a property insurance "policy specifically ties the insurer's liability to the covered peril having some specific effect on the property." *"Physical" loss or damage*, 10A Couch on Ins. § 148:46. And, "[i]n modern policies. . . this trigger is frequently 'physical loss or damage' but may be any of several variants focusing on 'injury,' 'damage,' and the like." *Id.* A policy requirement that a loss be *physical* "is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the

property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Id.*

While there is no published Michigan court decision interpreting the language of a standard "direct physical loss or damage" policy provision, the Sixth Circuit, found that Michigan courts would likely follow the majority rule and require "tangible damage" for coverage under such a policy provision. *See Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) (citing *Acorn Inv. Co. v. Michigan Basic Prop. Ins. Ass'n*, No. 284234, 2009 WL 2952677, at *1 (Mich. Ct. App. Sept. 15, 2009)) (noting that the Michigan Court of Appeals had previously relied on a Texas opinion to define the word "direct" and the Texas opinion relied on also found a tangibility requirement in the "direct physical loss" provision). In *Universal Image Prods.*, the court found that cleaning expenses, moving costs, and lost income due to the discovery of mold in the ventilation system of Plaintiff's leased office space was not covered by a property insurance policy that limited coverage to "direct physical loss or damage" *Id.* at 571-73. Since "[a]ll remediation efforts were paid for by [plaintiff]'s landlord, and not a single piece of [plaintiff]'s physical property was lost or damaged as a result of mold or bacterial contamination," the Sixth Circuit found the claim losses were "not tangible, physical losses, but economic losses." *Id.* at 573.

In a recent decision in this court involving a chiropractor's loss of income due to the same Michigan COVID-19 executive order, the court found that the order did not implicate an insurance policy providing coverage against "accidental direct physical loss to Covered Property." *Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *5, 8 (E.D. Mich. Sept. 3, 2020) (Ludington, J.) (holding

8

that "'[a]ccidental direct physical loss to Covered Property'" is an unambiguous term that plainly requires Plaintiff to demonstrate some tangible damage to Covered Property. "Because Plaintiff has failed to state such damage, the complaint does not allege a Covered Cause of Loss.").

Plaintiff attempts to distinguish both *Universal Image Prods*. and *Turek* but its arguments are unpersuasive. First, Plaintiff points out that the Sixth Circuit's reading of the "direct physical loss or damage" provision in *Universal Image Prods* was not essential to the court's ultimate holding. (ECF 16, PageID.367.) It is true that the *Universal Image Prods.* court would have reached the same outcome, "even if Michigan were to adopt a more expansive definition of the phrase 'direct physical loss or damage'" because the mold in the case never made the leased space "'uninhabitable' or substantially 'unusable.'" *Universal Image Prods., Inc.*, 475 F. App'x at 574. But the opinion's reasoning explaining why Michigan would adopt the majority approach to policy interpretation—requiring tangible damage—is still persuasive. As the *Turek* court explains:

> Michigan courts determine a word's ordinary meaning by consulting a dictionary. Merriam-Webster Dictionary defines "physical" as "having material existence; perceptible especially through the senses and subject to the laws of nature." Physical, Merriam-Webster, https://www.merriam-webster.com/dictionary/physical (last visited Aug. 31, 2020). Here, "physical" is an adjective modifying "loss," which is defined as, inter alia, "destruction, ruin," "the act of losing possession," and "a person or thing or an amount that is lost." Loss, Merriam-Webster, https://www.merriam-webster.com/dictionary/loss (last visited Aug. 31, 2020).

*Turek Enterprises*, 2020 WL 5258484, at *6 (citation omitted). The court sees no reason to part company with this interpretation of the phrase "direct physical loss."[2]

---

[2] It is true that some courts have adopted a minority position, holding that "physical loss" occurs when real property becomes "uninhabitable" or substantially

Perhaps anticipating such an outcome, Plaintiff also argues that the policy language at issue in the present case is distinguishable from the policies in *Universal Image Prods.* and *Turek.* (ECF No. 16, PageID.367.) Plaintiff points out that the court in *Turek* found the inclusion of the preposition "to" in the phrase "direct physical loss to Covered Property," as opposed to the preposition "of," strengthened the case for its interpretation requiring tangible damage for a valid claim. (*Id.* (citing *Turek Enterprises*, 2020 WL 5258484, at *6).) So, Plaintiff reasons that "[t]he language in Dr. Kirsch's policy covering 'partial or total loss *of* or damage to' the covered property is the exact language the *Turek* court said would establish a plausible claim." (*Id.*)

Such a reading of the policy at issue here is misleading. In making his argument Plaintiff quotes the policy's definition which defines "damage" as "partial or total loss *of* or damage to your covered property." (ECF No. 1-2, PageID.158 (emphasis added)). However, both the practice income and civil authority provisions of the policy expressly limit coverage to "direct physical damage *to* the [covered property]." (*Id.* at 142, 46. (emphasis added.) Reading the definition of *damage* and the applicable policy

---

"unusable." *See e.g.*, *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir.2002) ("When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct [physical] loss to its owner."); *Prudential Prop. & Cas. Co. v. Lillard–Roberts*, CV–01–1362–ST, 2002 WL 31495830, at *9 (D.Or. June 18, 2002) (holding a "direct physical loss" is possible when property is "rendered uninhabitable by mold"); *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *4 (W.D. Mo. Aug. 12, 2020) (denying a motion to dismiss because "COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it 'unsafe and unusable'"). The court sees no indication that Michigan court courts would adopt this minority view, in fact, the first Michigan court to consider this issue (albeit in an unpublished Circuit Court ruling) also found that tangible damage was required under the plain meaning of such an insurance provision and it held that a COVID-19 damage claim would fail. *See Management Co. LLC v. Michigan Ins. Co.*, No. 20-258-CB, 2020 WL 4561979, at *1 (Mich. Cir. Ct. July 21, 2020).

provisions together it becomes apparent that the coverage provided by the policy is at

least as narrow as the "direct physical loss to Covered Property" limitation in *Turek*. *See*

2020 WL 5258484, at *6. While the policy adopts a rather broad definition of the word

"damage" that definition is further cabined when the word "damage" is used with the

adverbs "direct" and "physical" as well as the preposition "to." Like *Turek*, these

additional words act to define the subset of damage covered by the policy. The ordinary

meaning of these words makes clear that a mere loss of use is insufficient to implicate

coverage—just as the same adjectives and preposition made clear in *Turek* that the

policy only covered a subset of possible losses.[3] *See id.* Therefore, the court finds that

coverage under the policy's practice income provision is limited to instances where

tangible damage to physical property has occurred.

Because Plaintiff has not "alleged that COVID-19 particles attached to and

damaged their property" Plaintiff has not even attempted to establish that COVID-19

caused tangible, physical damage to the property itself. *See Turek Enterprises*, 2020

WL 5258484, at *7 (E.D. Mich. Sept. 3, 2020) (quoting *Studio 417, Inc. v. Cincinnati Ins.

Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *6 (W.D. Mo. Aug. 12, 2020)). Like

---

[3] The court also notes that the definition of "damage" contained in the policy is not
quite as broad as Plaintiff contends. The definition does NOT cover *all* losses of or
damage to your covered property but instead includes only "*partial* or *total* loss of or
damage to your covered property." (ECF No. 1-2, PageID.158 (emphasis added).)
Black's Law Dictionary makes clear that both "partial loss" and "total loss" are phrases
that have a distinct meaning in a legal context apart from the broader definition of "loss".
*See* LOSS, Black's Law Dictionary (11th ed. 2019) (separately defining partial loss as
"[a] loss of part of the insured property; damage not amounting to a total loss," and, a
total loss as "[t]he complete destruction of insured property so that nothing of value
remains and the subject matter no longer exists in its original form.") The most
straightforward reading of the provision therefore is that the phrases *partial* and *total*
loss are included in the definition to merely make clear that the physical property is
covered both when it is completely destroyed and when it is only partially damaged.

other viruses, COVID-19 injures people but does not seem to cause any lasting damage to physical property. Because Plaintiff's claim, as pled, alleges only a temporary loss of use of Plaintiff's property, the tangibility requirement implicit in the policy forecloses a claim under the practice income provision.

## 2. Civil Authority Provision

Likewise, the civil authority provision which provides coverage when a civil authority "prohibits access to the described premises due to *the direct physical damage to property*, other than at the described premises," (ECF No. 1-2, PageID.146 (emphasis added)), is not implicated by the executive order. The factual allegations in the complaint allege no tangible damage to other's property that would support a claim under the provision's language. (*See* ECF No. 1-2, PageID.23-5.)

Even if Plaintiff were able to point to direct physical damage to other property due to COVID-19, he has also failed to state a nexus between prior property damage and the executive order. Defendant cites a number of cases indicating that preemptive government shutdown orders to protect property do not establish a causal link between the damage to property and order barring access.[4] *See e.g. United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 134 (2d Cir. 2006) (declining to provide United coverage under a civil authority insurance provision for lost earnings stemming from the shutdown of Ronald Reagan Washington National Airport after Sept. 11th, 2001 because "the government's subsequent decision to halt operations at the Airport

---

[4] It is also not clear that that the executive order actually "prohibit[ed] access" access to Plaintiff's dental office. Afterall, the order stated that Plaintiff was free to continue conducting emergency dental procedures at the facility. (ECF No. 1-2, PageID.23.)

indefinitely was based on fears of future attacks" not due to existing damage to the Pentagon.); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.,* No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) (holding that civil authority insurance coverage was unavailable for airport shops after the FAA shutdown flights on Sept. 11th, 2001 because the order was "designed to prevent, protect against, or avoid future damage [and] is not a 'direct result; of already existing property loss or damage."); *Syufy Enterprises v. Home Ins. Co. of Indiana*, No. 94-0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (denying "civil authority" insurance coverage for a movie theater closed by a curfew designed to "prevent 'potential' looting" because the "requisite causal link between damage to adjacent property and denial of access to a Syufy theater is absent"). In the present action, Plaintiff does not directly respond to, or attempt to distinguish, these precedents. (*See* ECF 16.) Plaintiff has failed to establish that the COVID-19 executive order was a direct result of damage to existing property as opposed to an attempt to curtail the virus's spread and future damage.

### 3. Extra Expense Provision

Plaintiff seeks coverage under the policy's extra expense provision. (ECF No. 1-2, PageID.25.) Defendant responds by arguing that the extra expense provision "is also limited to losses caused by direct physical damage" because "Plaintiff has alleged no direct physical damage and no property in need of restoration" his losses fall outside the policy's coverage. In his response to the motion to dismiss, Plaintiff concedes that coverage under this clause likely hinges on whether the policy requires "tangible damage." (ECF No.16, PageID.375.) Since the court has already found that the identical "direct physical damage" language in the practice income and civil authority provisions

require a Plaintiff to allege tangible property damage, the court must agree with Defendant's conclusion. (*See* ECF No. 12, PageID.279.) As explained above, Defendant has not alleged that COVID-19 was present in his dental office during the period in question. Therefore, based on the provision's ordinary meaning, extra expenses incurred due to the executive order are not covered by the policy.

### B. Ordinance of Law Policy Endorsement

Plaintiff purchased additional "Ordinance or Law Coverage Extension" coverage. The endorsement provides increased coverage for "Business Income and Extra Expense" during a period of restoration. (ECF No. 1-2, PageID.63.) However, the coverage is only available when enforcement of an ordinance: "1) Regulates the construction, repair or replacement of any property; 2) Requires the tearing down or replacement of any parts of property not damaged by a covered cause of loss; and 3) Is in force at the time of loss." (*Id.* at 63-64.) While Plaintiff's complaint cites this provision as a source of extra coverage, (*Id.* at 25), Defendant argues that the complaint "fails to allege any facts that satisfy condition[s]" (1) and (2). (ECF No. 12, PageID.282.) Since the conjunction "and" is used, the court concludes that the Ordinance of Law endorsement requires all three of the above conditions be satisfied for the enhanced coverage to apply. Because the complaint does not allege specific damage to the facility requiring repair, this policy endorsement is not implicated. Plaintiff appears to concede as much as its response to the motion to dismiss does not address Defendant's argument against coverage under the ordinance or law enhancement.

14

## V. CONCLUSION

For the reasons explained above, the court finds that the property insurance policy purchased by Plaintiff Kirsch does not apply to lost practice income and related expenses caused by a temporary Michigan executive order prohibiting non-essential dental procedures. Accordingly,

IT IS ORDERED that Defendant's motion to dismiss (ECF No. 12) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's complaint, (ECF No. 1-2), is DISMISSED WITH PREJUDICE.

s/Robert H. Cleland_____/
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  December 14, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 14, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner_____/
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-11930.KIRSCH.MTD.AAB.RHC.docx

# Exhibit G

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **TERRY BLACK'S BARBECUE, LLC** | § | |
| **AND TERRY BLACKS BARBECUE** | § | |
| **DALLAS, LLC,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:20-CV-665-RP** |
| **STATE AUTOMOBILE MUTUAL** | § | |
| **INSURANCE COMPANY AND** | § | |
| **RUCKER-OHLENDORF INSURANCE,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are State Automobile Mutual Insurance Co.'s Motion for Judgment on the Pleadings, filed July 24, 2020 (Dkt. 11); Plaintiffs' Response in Opposition to Motion for Judgment on the Pleadings, filed November 27, 2020 (Dkt. 24); and State Automobile Mutual Insurance Co.'s Reply, filed December 4, 2020 (Dkt. 25). On September 25, 2020, the District Court referred the above motion and related filings to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.   Background

Plaintiffs Terry Black's Barbecue, LLC and Terry Black's Barbecue Dallas, LLC ("Plaintiffs") are Texas limited liability companies that own and operate two Terry Black's Barbecue dine-in restaurants in Austin and Dallas, Texas. Defendant State Automobile Mutual Insurance Company ("State Auto"), an Ohio corporation, issued Plaintiffs identical commercial property insurance

policies (collectively, the "Policy") covering their respective business locations from October 2, 2019 to October 2, 2020. Dkt. 1-1 at 83. The Policy generally provides coverage for direct losses of or damage to each Plaintiff's property and business personal property at its premises, with specified exclusions. Dkt. 1-1 at 137. The Policy also contains an Exclusion of Loss Due to Virus or Bacteria Endorsement. This exclusion applies to the Commercial Property Coverage Form, which excludes coverage for loss or damage caused by or resulting from "any virus." *Id.* at 136.

The Policy contains a Business Income (and Extra Expense) Coverage Form providing coverage to Plaintiffs for loss of business income and extra expenses (commonly referred to as "business interruption losses") during the necessary suspension of their operations during a restoration period caused by direct physical loss or damage to Plaintiffs' business property. *Id.* at 196. The Policy also contain a Restaurant Extension Endorsement. This endorsement provides coverage for business interruption losses from the suspension of business operations "due to the order of a civil authority" resulting from the actual or alleged exposure of the described premises to a contagious or infectious disease. *Id.* at 206.

Plaintiffs state in the Petition that the World Health Organization declared the COVID-19 outbreak a global pandemic on March 11, 2020. Shortly thereafter, the Centers for Disease Control and Prevention issued guidance on slowing the spread of the virus, including advising the public to observe social distancing and avoid large gatherings. State and local governments issued many orders to protect public health by limiting the spread of COVID-19, including orders limiting gatherings and restricting operation of non-essential businesses. Relevant here, on March 19, 2020, the Governor of Texas issued Executive Order No. GA-08, ordering that:

> In accordance with the Guidelines from the President and the CDC, people shall avoid eating or drinking at bars, restaurants, and food courts, or visiting gyms or massage parlors; provided, however, that the use of drive-thru, pickup, or delivery options is allowed and

highly encouraged throughout the limited duration of this executive order.

Dkt. 11-6 at 4.[1] The order remained in effect until April 3, 2020. On March 17, 2020, the City of Austin ordered all food establishments "to close common dining areas open to the public until May 1, 2020," encouraging them to "provide take-away or no-contact delivery food service designed to limit exposure between individuals." *Order of Control for Bars and Restaurants* (March 17, 2020).[2] Similarly, on March 31, 2020, Dallas County Judge Clay Jenkins issued a Stay Home Stay Safe Order, requiring "all individuals anywhere in Dallas County to shelter in place" and ordering that:

> Restaurants with or without drive-in or drive-through services and microbreweries, micro-distilleries, or wineries may only provide take out, delivery, or drive-through services as allowed by law. In-person service is prohibited. Customers may order and pay inside, but are prohibited from waiting inside the restaurant for their food. All food must be brought outside to customers. To allow for increased access to restaurants, this Order hereby suspends all laws and regulations prohibiting people from walking in a drive-through.

Dkt. 11-4 at 2. The Dallas order remained in effect through April 3, 2020. These orders have expired, but other civil authority orders remain in effect restricting the number of people allowed at Plaintiffs' restaurants.

As a result of the civil authority orders, Plaintiffs allege that they have "curtailed and suspended their usual and customary business operations, confining their operations to the very limited extent that is both safe and possible given the ordered restrictions." Dkt. 1-1 ¶ 15. Plaintiffs allege that

---

[1] "When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[2] https://www.austintexas.gov/department/covid-19-information/orders-rules (last visited December 14, 2020). The parties did not attach this City of Austin Order to the Complaint, but the Court may take judicial notice of matters of public record. *Firefighters' Retirement Sys., v. EisnerAmper*, 898 F.3d 553, 558 n.2 (5th Cir. 2018).

they have suffered "business interruption and a loss of business income" as a result of the civil authority orders, and submitted a claim to State Auto to recover for those losses. *Id.* ¶ 16. On April 8, 2020, State Auto denied Plaintiffs' claim, contending that Plaintiffs' losses were not covered under the terms of the Policy.

Plaintiffs filed this suit in state court on May 14, 2020, against State Auto and Rucker-Ohlendorf Insurance ("ROI"), the insurance broker who sold Plaintiffs the Policy. Plaintiffs assert claims against State Auto for breach of contract, breach of the common-law duty of good faith and fair dealing, and violations of the Texas Insurance Code, and request a declaratory judgment. *See Terry Black's Barbecue v. State Auto. Mut. Ins. Co.,* D-1-GN-20-002659 (250th Dist. Ct., Travis County, Tex. May 14, 2020) (Dkt. 1-1 at 7). Plaintiffs also alleged that ROI was negligent in failing to "evaluate the sufficiency of the coverage limits it was recommending and selling to Plaintiffs." *Id.* ¶ 45.

On June 25, 2020, State Auto removed this case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1446, and shortly thereafter filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). On July 27, 2020, Plaintiffs filed a Motion to Remand, arguing that State Auto's removal was defective. On July 29, 2020, the District Court granted Plaintiffs' request to file a response to the Rule 12(c) Motion after the Court ruled on the Motion to Remand. On November 15, 2020, the undersigned Magistrate Judge issued an Interim Report and Recommendation recommending that the District Court deny Plaintiffs' Motion to Remand and dismiss ROI based on fraudulent joinder. The District Court adopted the Interim Report and Recommendation on November 23, 2020. Subsequently, Plaintiffs filed their Response to Safe Auto's Rule 12(c) Motion, and Safe Auto filed its Reply. Accordingly, the Rule 12(c) Motion is ripe for adjudication.

## II.     Legal Standards

The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III.     Analysis

In its Motion for Judgment on the Pleadings, State Auto argues that Plaintiffs' breach of contract claim fails because Plaintiffs' claim for business interruption losses due to the COVID-19 pandemic is not covered under the Policy. Specifically, State Auto contends that the commercial

property Policy provides coverage only for "direct physical loss of or direct physical damage to property," and because Plaintiffs have failed to allege any damage or physical loss to their property, the Policy does not cover the claim. State Auto argues that Plaintiffs are attempting to recover for purely economic losses to their restaurants due to the COVID-19 pandemic, which are not covered under the Policy.

State Auto further contends that even if Plaintiffs had suffered a direct physical loss or damage to their property, the virus exclusion provision would bar their claim. State Auto also argues that civil authority coverage is unavailable in this case because the civil authority orders did not prohibit Plaintiffs from accessing their premises, which is a prerequisite to coverage. Finally, State Auto argues that because Plaintiffs have not suffered a covered loss under the Policy, their extracontractual claims fail.

In response, Plaintiffs argue that they have alleged a plausible breach of contract claim because COVID-19 and the civil authority orders caused Plaintiffs to suffer "a direct physical loss of their properties." Dkt. 24 at 13. Plaintiffs contend that "[t]he Civil Authority orders in tandem with the physical damage or loss caused by damage from the infectious disease and its risk of transmission, are both direct physical losses to the subject properties because use of and access to the operations of the restaurant properties for their intended purposes was suspended, and had to be physically altered, limited or prohibited." *Id.* Alternatively, Plaintiffs argue that a direct physical loss or injury is not required under the Policy because, under the Restaurant Extension Endorsement, "the combination of mere exposure (alleged or actual) to a contagious or infectious disease and the suspension of operation caused by a Civil Authority order, is all that is needed to have a covered loss." *Id.* at 3. Accordingly, Plaintiffs argue that they have stated a plausible claim for relief.

## A. Texas Insurance Law

The parties agree that Texas law governs this diversity action.[3] "Texas law provides that insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010). "Unless the policy dictates otherwise, courts give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017). "The paramount rule is that courts enforce unambiguous policies as written." *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and courts construe it as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *see also Pan Am*, 959 F.3d at 674 ("If an insurance contract, just like any other contract, uses unambiguous language, that's that.").

> [U]nder Texas contract law, "ambiguity" means more than "lack of clarity." A policy is not ambiguous merely because different parties—or different judges—offer conflicting interpretations. . . . A policy is only ambiguous if, giving effect to all provisions, its language is subject to two or more reasonable interpretations.

*Id.* If a policy is ambiguous, a court must resolve the uncertainty by adopting the construction that most favors the insured. *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). "The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy." *Id.*

The Court examines the relevant provisions of the Policy to determine whether coverage exists.

---

[3] In a diversity action, federal courts are bound to apply the forum state's substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, the Court must apply Texas law in this case.

**B. No Coverage under Business Income (and Extra Expense) Coverage Form**

The Business Income (and Extra Expense) Coverage Form provides, in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension"[4] of your "operations"[5] during the "period of restoration."[6] The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.[7]

Dkt. 1-1 at 207. In other words, to trigger coverage under this provision, the insured party must show that there was a suspension of business operations stemming from a "direct physical loss of or damage to property." *Id.* The Policy does not define "direct physical loss."

Plaintiffs argue that they have suffered "a direct physical loss of their properties" due to COVID-19 and the related civil authority orders. Dkt. 24 at 13. Plaintiffs argue that "[t]he Civil Authority orders in tandem with the physical damage or loss caused by damage from the infectious disease and its risk of transmission, are both direct physical losses to the subject properties because use of and access to the operations of the restaurant properties for their intended purposes was suspended, and had to be physically altered, limited or prohibited." *Id.* Plaintiffs argue that the term direct physical loss is ambiguous and that Plaintiffs' interpretation that "[t]he term 'loss' reasonably encompasses Plaintiffs' inability to have its Property safely fully operated and occupied." *Id.* at 12.

---

[4] "Suspension" is defined as "the slowdown or cessation of your business activities" Dkt. 1-1 at 739.

[5] "Operations" is defined as "business activities occurring at the described premises." *Id.*

[6] "Period of restoration" means the period of time that begins "72 hours after the time of direct physical loss or damage for Business Income Coverage" or "immediately after the time of direct physical loss or damage for Extra Expense Coverage." *Id.*

[7] "Covered Causes of Loss" is defined in the Causes of Loss-Special Form as "direct physical loss unless the loss is excluded or limited in this Policy." *Id.* at 445.

8

A provision is not ambiguous merely "because the parties to a lawsuit offer conflicting interpretations of the contract's provisions." *Nassar*, 508 S.W.3d at 258. If only one interpretation of a provision is reasonable under the circumstances, the provision is unambiguous. *Id.* Only if the parties identify different, reasonable interpretations is a provision ambiguous and construed in favor of the insured. *Id.*

The Court finds that the term "physical loss" is not ambiguous. Plaintiffs' interpretation is unreasonable because it focuses on the word "loss" while ignoring the Policy's unambiguous requirement that there must be a "direct physical loss of or damage *to property*" in order to trigger coverage. Dkt. 1-1 at 207 (emphasis added). Notably, the Policy is a commercial property insurance policy insuring Plaintiffs' buildings, business personal property in or around those buildings, and loss of income from losses to that property. While the Policy does not define a "direct physical loss of property," the Fifth Circuit has stated that "property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property." *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006).

> The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Id.* (quoting 10A COUCH ON INS. § 148:46 (3d ed. 2005)).

In order to trigger coverage under a commercial property policy, "physical loss" requires there to be some "distinct, demonstrable, physical alteration of the property," as opposed to merely economic losses. *Ross v. Hartford Lloyd Ins. Co.*, No. 4:18-CV-00541-O, 2019 WL 2929761, at *6 (N.D. Tex. July 4, 2019) (quoting 10A COUCH ON INS. § 148:46 (3d ed. 2010)); *see also Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990) (noting that "[t]he language

9

'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper").

Although the Fifth Circuit has yet to address whether COVID-19 and related civil authority orders can qualify as a physical loss of or damage to property under property insurance policies, district courts in this Circuit have determined that they do not. In *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020), owners of several barbershops sought coverage under their insurance policies for business interruption losses due to the COVID-19 pandemic and related civil authority shutdown orders. While Senior District Court Judge Ezra acknowledged that some courts outside the Fifth Circuit "have found physical loss even without tangible destruction to the covered property," such as when a noxious odor permeated a building causing it to become uninhabitable, the district court stated that, "within our Circuit, the loss needs to have been a 'distinct, demonstrable, physical alteration of the property.'" *Id.* at 5 (quoting *Hartford*, 181 F. App'x at 470). The court found that COVID-19 does not produce a direct physical loss to property like "a noxious odor that makes a business uninhabitable"; therefore, the plaintiffs failed to plead "a direct physical loss" to property to trigger coverage. *Id.*

Similarly, in *Sultan Hajer d/b/a Rug Outlet v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *2 (E.D. Tex. Dec. 7, 2020), the Eastern District of Texas rejected the plaintiff's argument that its business interruption losses incurred during the COVID-19 shutdown of non-essential businesses constituted a "direct physical loss of or damage to property" under the property insurance policy. Relying on the same policy language at issue here, plaintiff argued that because the policy did not define "direct physical loss," the term was ambiguous and should include the plaintiff's "inability to have his Property safely fully operated and occupied." *Id.* The

court disagreed, reasoning that "[t]he scope of the term 'physical loss' is far narrower than plaintiff contends and is only reasonably read in context as meaning 'a distinct, demonstrable, physical alteration of the property.'" *Id.* (quoting *Hartford*, 181 F. App'x at 470). Because the plaintiff had suffered only economic damages and had not alleged any tangible damage or loss to his store, his claim was not covered under the terms of the policy. *Id.* at 3; *see also Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00087-KS-MTP, --- F. Supp. 3d ----, 2020 WL 6503405, at *3 (S.D. Miss. Nov. 4, 2020) (holding that plaintiff's business interruption losses due to the COVID-19 pandemic were not covered under policy where property was not damaged and plaintiff was not permanently dispossessed of any insured property); *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, No. 5:20-CV-00680-OLG, 2020 WL 6578417, at *6 (W.D. Tex. Oct. 26, 2020) (noting that "in recent months, numerous courts—including at least one court in this District and Division— have held that the lost *use* of a property due to the Covid-19 pandemic and/or government shutdown orders did not constitute 'direct physical loss of' a property such that it may be the basis for a claim for loss of business income").[8]

---

[8] The great majority of courts outside the Fifth Circuit also have held that COVID-19 and related civil authority shutdown orders do not constitute a direct physical loss of property under similar insurance policies. *See Promotional Headwear Int'l. v. Cincinnati Ins. Co.*, No. 20-CV-2211-JAR-GEB, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020); *4431, Inc. v. Cincinnati Ins. Co.*, No. 5:20-CV-04396, 2020 WL 7075318, at *12 (E.D. Pa. Dec. 3, 2020); *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-00401, 2020 WL 6436948, at *1 (S.D. W. Va. Nov. 2, 2020); *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, 2020 WL 6392841, at *8 (S.D. Fla. Nov. 2, 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *8 (S.D. Ala. Oct. 21, 2020); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *5 (C.D. Cal. Oct. 2, 2020), *appeal docketed*, No. 20-56031 (9th Cir. Oct. 6, 2020); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *6 (N.D. Ga. Oct. 6, 2020), *appeal docketed*, No. 10-14156 (11th Cir. Nov. 4, 2020); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 4-20-CV-222-CRW-SBJ, 2020 WL 5820552, at *1 (S.D. Iowa Sept. 29, 2020), *appeal docketed*, No. 203211 (8th Cir. Oct. 21, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No 20 CV 2160, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, 2020 WL 5525171, at *6 (N.D. Cal. Sept. 14, 2020), *appeal docketed*, No. 20-16858 (9th Cir. Sept. 24, 2020); *Turek Enters. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, --- F. Supp. 3d ----, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020). *But See Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *4 (W.D. Mo. Aug. 12, 2020) (holding that insureds adequately alleged

Plaintiffs argue that the civil authority orders that caused a suspension in the full operation of their restaurants caused them to suffer "a *physical* loss" of their property. Dkt. 24 at 13. But, as the *Hajer* court noted, the scope of the term "physical loss" is narrower than Plaintiffs contend and "only reasonably read in context as meaning 'a distinct, demonstrable, physical alteration of the property.'" 2020 WL 7211636, at *2 (quoting *Hartford*, 181 F. App'x at 470). The civil authority orders did not cause any tangible physical alteration to Plaintiffs' property. Rather, Plaintiffs were precluded only from fully operating their restaurants temporarily, while the orders were in effect. Plaintiffs do not allege that the restaurants underwent any physical change as a result of the civil authority orders. A "regulation prohibiting people from patronizing a business is not a tangible alteration any property." *Id.* at *3. The only possible change was "an increased public and private perception of the existing threat [of COVID-19], which cannot be deemed a physical change that rendered the property unsatisfactory." *Henry's La. Grill*, 2020 WL 5938755, at *5.[9]

Plaintiffs' businesses, moreover, were never shut down as a result of the civil authority orders. They continued to offer take-out services and, subsequently, limited capacity dine-in services. Thus, Plaintiffs were not denied access to or use of their property. *See Mark's Engine Co.*, 2020 WL 5938689, at *5 (finding that restaurant owner suffered no complete direct physical loss of its property because it always had complete access to the premises, and noting that: "The only

---

that they incurred a direct physical loss to their property where they alleged that COVID-19 made their businesses unsafe and unusable); *K.C. Hopps, Ltd v. Cincinnati Ins. Co.*, No. 20-CV-00437-SRB, 2020 WL 6483108, at *1 (W.D. Mo. Aug. 12, 2020) (same).

[9] In support of their argument that loss of use constitutes "direct physical loss," Plaintiffs rely on the outlier rulings from the Western District of Missouri that COVID-19 can constitute a direct physical loss to property. *See Studio 417*, 2020 WL 4692385, at *4; *K.C. Hopps,* 2020 WL 6483108, at *1. Most courts that have addressed this issue have found that loss of use does not constitute direct physical loss. *See* n.8 *supra*; see also *see also Zwillo V, Corp. v. Lexington Ins. Co.*, No. 4:20-00339-CV-RK, 2020 WL 7137110, at *8 (W.D. Mo. Dec. 2, 2020) ("To the extent this Court's ruling—finding the language in the policy plainly and unambiguously does not cover the claims—conflicts with *Studio 417*, *K.C. Hopps* . . . this Court respectfully disagrees with those cases.").

individuals who could potentially claim 'direct physical loss of' access to the premises would be patrons who were no longer allowed to dine in."). Accordingly, Plaintiffs have not alleged a direct physical loss of their property from the civil authority orders.

Plaintiffs also argue that COVID-19 itself causes direct physical damage to property because of "the presumed presence of this contagious, infectious disease on physical surfaces in buildings, in the air, and in human beings, transmissible by any of these vehicles." Dkt. 24 at 2.[10] Plaintiffs do not allege that the virus that causes COVID-19 was ever present at either of their restaurants. *See Hajer*, 2020 WL 7211636, at *3 (finding no physical alteration to property where there was no pleading "that the virus itself was present on and altered the property"). Plaintiffs merely speculate that the virus could have been present because of its prevalence in Austin and Dallas. Dkt. 24 at 13. Such conclusory allegations are insufficient to state a plausible claim that Plaintiffs' property was damaged. *See Promotional Headwear*, 2020 WL 7078735, at *8 (finding that plaintiff's allegation that the virus likely contaminated its property failed to raise a right of relief above the speculative level).

Even assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant. *See id.*; *Uncork and Create*, 2020 WL 6436948, at *5. Plaintiffs have not pled any facts showing that the coronavirus caused physical loss, harm, alteration, or structural degradation

---

[10] In support of their argument that COVID-19 damages property, Plaintiffs rely heavily on Dallas County Judge Clay Jenkins' statement in his March 31, 2020 Order that "[t]he COVID-19 virus causes property loss or damage due to its ability to attach to surfaces for prolonged periods of time." Dkt. 11-4 at 1. This statement is irrelevant to the coverage dispute at issue since the Court must look to the plain terms of the Policy and precedent interpreting similar policies.

to their property. *See Mark's Engine Co.*, 2020 WL 5938689, at *3; *Sandy Point Dental*, 2020 WL

5630465, at *3. As the district court reasoned in *Uncork and Create*:

> COVID-19 poses a serious risk to people gathered in proximity to
> one another, and the governmental orders closing certain businesses
> were designed to ameliorate that risk. Property, including the
> physical location of Uncork and Create, is not physically damaged
> or rendered unusable or uninhabitable. If people could safely
> congregate anywhere without risk of infection, the Plaintiff has
> alleged no facts to suggest any impediment to Uncork and Create's
> operation. No repairs or remediation to the premises are necessary
> for its safe occupation in the event the virus is controlled and no
> longer poses a threat. In short, the pandemic impacts human health
> and human behavior, not physical structures. Those changes in
> behavior, including changes required by governmental action,
> caused the Plaintiff economic losses. The Court is not
> unsympathetic to the situation facing the Plaintiff and other
> businesses. But the unambiguous terms of the Policy do not provide
> coverage for solely economic losses unaccompanied by physical
> property damage.

2020 WL 6436948, at *5.

Plaintiffs also fail to demonstrate that they are entitled to business interruption losses under the

following civil authority provision of the Policy:

> When a Covered Cause of Loss causes damage to property other than
> property at the described premises, we will pay for the actual loss of
> Business Income you sustain and necessary Extra Expense you sustain
> caused by action of civil authority that prohibits access to the described
> premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged
>     property is prohibited by civil authority as a result of the
>     damage, and the described premises are within that area but are
>     not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous
>     physical conditions resulting from the damage or continuation
>     of the Covered Cause of Loss that caused the damage, or the
>     action is taken to enable a civil authority to have unimpeded
>     access to the damaged property.

Dkt. 1-1 at 733. This provision requires (1) damage to a property within one mile of the insured

property, and (2) an order of civil authority prohibiting access to the neighboring property after it

14

was damaged. Plaintiffs meet neither element. Just as COVID-19 did not cause direct physical loss to Plaintiffs' property, Plaintiffs do not allege that the pandemic caused direct physical loss to other property. *See Sandy Point Dental*, 2020 WL 5630465, at * 3 (holding that civil authority provision did not apply where there was no physical loss to other property). Plaintiffs also do not allege that the civil authority orders were issued as a result of loss of their property, but rather that they caused the property loss. The civil authority provision "requires the physical damage to prompt the act of civil authority, not the other way around." *Hajer*, 2020 WL 7211636 at *4. Accordingly, Plaintiffs' claim for civil authority coverage fails.

### C. Restaurant Extension Endorsement

Plaintiffs argue that even if the business interruption loss provision is inapplicable, they still are entitled to coverage under the Restaurant Extension Endorsement, which modifies the Building and Personal Property Coverage, the Business Income (and Extra Expense) Coverage, the Business Income (Without Extra Expense) Coverage, Causes of Loss, and Commercial General Liability Forms of the Policy. This provision provides coverage for food spoilage and contamination, certain medical expenses, and:

> a. The "suspension" of your "operations" at the described premises due to the order of a civil authority; or adverse public communications or media reports, resulting from the actual or alleged:
>
> (1) Food or drink poisoning of a guest at the described premises; or
>
> (2) Exposure of the described premises to a contagious or infectious disease.
>
> b. The "period of restoration" for this Cause of Loss will begin 24 hours after you receive notice of closing from the Board of Health or any other governmental authority and will not exceed 30 consecutive calendar days from the date of the suspension of your "operations".

*Id.* at 467. "Suspension" is "the slowdown or cessation of your business activities." *Id.* at 739. Thus, the business need not be completely shut down to trigger the provision.

Plaintiffs argue that, in contrast to the business interruption loss provision discussed above, the Restaurant Endorsement does not require a showing of direct physical loss of or damage to property. Plaintiffs contend that their claim is covered under this provision because they suspended their business operations as a result of the civil authority orders issued in response to COVID-19, an infectious disease.

Plaintiffs, however, have glossed over the requisite elements of this provision. Although Plaintiffs are correct that the Restaurant Endorsement does not require direct physical loss or damage to property to trigger coverage, the clear terms of the provision require Plaintiffs to show (1) a suspension of business operations (2) due to a civil authority order (3) that was issued in response to the actual or alleged exposure of the premises to a contagious or infectious disease. Plaintiffs have not met the third requirement.

First, as noted earlier, Plaintiffs do not allege in their Petition that their restaurants were ever exposed to the virus that causes COVID-19. Plaintiffs merely speculate that the virus could have been present because it was prevalent in the Austin and Dallas communities. *See* Dkt. 24 at 1 (noting the "presumed presence" of COVID-19); *id.* at 13. Such conclusory allegations are insufficient to show that this provision is applicable. *See Promotional Headwear*, 2020 WL 7078735, at *8.

In addition, Plaintiffs must show that the civil authority orders were issued as a result of the presence of COVID-19 at their restaurants. But the civil authority orders did not result from the actual or alleged exposure to COVID-19 at Plaintiffs' restaurants. The civil authority orders were issued in response to the global pandemic, not in response to the actual or alleged presence of the virus that causes COVID-19 at Plaintiffs' restaurants. Accordingly, Plaintiffs have not demonstrated the causal connection required for coverage. *See Nat'l Union Fire Ins. Co. of*

16

*Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997) (holding that policy language covering injury "caused by an accident *resulting from* the . . . use of a covered auto" required a causal relationship between the injury and use of the auto). The Court finds that the Restaurant Endorsement Provision does not apply.[11]

Because Plaintiffs have not demonstrated that their insurance claim is covered under the Policy, they have not alleged a plausible breach of contract claim. *See Vizza Wash*, 2020 WL 6578417, at *6. Accordingly, Safe Auto's Rule 12(c) Motion should be granted with regard to Plaintiffs' breach of contract claim and request for declaratory judgment that Plaintiffs' claim is covered under the Policy.

### D. Plaintiffs' Texas Insurance Code and Bad-Faith Claims

Safe Auto argues that Plaintiffs' Texas Insurance Code and common law breach of the duty of good faith and fair dealing claims also should be dismissed. Plaintiffs do not respond to Safe Auto's arguments. By failing to respond to Safe Auto's arguments, Plaintiffs have failed to sustain their burden of proof and appear to have abandoned those claims. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (citing *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (stating that plaintiff abandoned her claim because she failed to defend it in her response to the defendant's motion to dismiss and failed to pursue the claim beyond her complaint)); *Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned.").

---

[11] Because the Court finds that the Policy does not provide coverage in this case, there is no need to address the virus exclusion provision. *See Mudpie*, 2020 WL 5525171, at *7 n.9 ("Because Mudpie is not entitled to Civil Authority coverage, the Court need not consider Travelers's additional argument that the virus exclusion bars such coverage.").

Plaintiffs' extra-contractual claims would fail even if Plaintiffs had not abandoned them. "As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015). For an insured to recover on a bad-faith insurance claim when the insurer has properly denied coverage for the claim, the insured must demonstrate that the insurer has committed an injury independent of the policy claim. *Id.* Similarly, "an insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018). In addition, misrepresentation claims under the Texas Insurance Code that are based on a party's failure to fulfill its contractual duties are more properly raised as breach of contract claims and should be dismissed. *Travelers Lloyds Ins. Co. v. Cruz Contracting of Texas, LLC*, No. 5:16-CV-759-DAE, 2017 WL 5202890, at *6 (W.D. Tex. Mar. 17, 2017). Based on the foregoing, Safe Auto's Rule 12(c) Motion to dismiss Plaintiffs' extracontractual claims should be granted.

### E. Request to Amend

Plaintiffs request an opportunity to file an amended complaint to cure any pleading insufficiencies. Because the Court has determined that there is no coverage for Plaintiff's losses in this case under the clear terms of the Policy, any attempt to amend the Petition would be futile. *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (stating that a district court may properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss"); *4431*, 2020 WL 7075318, at *12 (denying leave to amend where "[t]he terms of the Policies are not in dispute, and there is nothing else Plaintiffs could allege that would bring their claimed losses within the Policies' coverage"). Accordingly, Plaintiffs' request to amend should be denied.

## F. Conclusion

In essence, Plaintiffs seek to recover economic damages they sustained as a result of the COVID-19 pandemic and associated civil authority orders under a commercial property insurance policy. While the Court is not unsympathetic to Plaintiffs' financial losses, the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property loss or damage to their property. As the district court in *Uncork and Create* reasoned:

> COVID-19 poses a serious risk to people gathered in proximity to one another, and the governmental orders closing certain businesses were designed to ameliorate that risk.
>
> ***
>
> In short, the pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses. The Court is not unsympathetic to the situation facing the Plaintiff and other businesses. But the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property damage.

2020 WL 6436948, at *5.

## IV. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** State Automobile Mutual Insurance Co.'s Motion for Judgment on the Pleadings (Dkt. 11) and enter Judgment in Defendant's favor. The undersigned **FURTHER RECOMMENDS** that the District Court **DENY** Plaintiffs' leave to amend as futile.

It is **FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made.

The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 14, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE