[Docket No. 17]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| COLBY RESTAURANT GROUP, INC., et al., | |
| Plaintiffs, | Civil No. 20-5927 (RMB/KMW) |
| v. | |
| UTICA NATIONAL INSURANCE GROUP, et al., | **OPINION** |
| Defendants. | |

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the Motion to Dismiss brought by Defendants AmGUARD Insurance Company and Republic-Franklin Insurance Company (collectively, "Defendants"). [Docket No. 17s.] For the reasons expressed below, the Court will grant Defendant's Motion.

## I.    FACTUAL BACKGROUND

Plaintiffs The Colby Restaurant Group ("Colby"), BBR Lauderdale LLC d/b/a TA Walk On's Bistreaux ("BBR"), and SRG Southcenter, LLC d/b/a Twin Peaks ("SRG" and, collectively, "Plaintiffs") own and operate food service related businesses in New Jersey (Colby), Delaware (Colby), Florida (BBR), and Washington (SRG). [Docket No. 19, at 1.] Their business, like many others, were adversely affected by the global COVID-19 pandemic.

Prior to the events that led to this case, Plaintiffs obtained property insurance policies (the "Policies") from Defendants. The Policies all have virtually identical Virus Exclusion clauses (the "Virus Exclusions") which state that Defendants will not provide coverage for loss or damage caused by a virus. Specifically, Colby's and BBR's Policies state that Defendants "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." [Docket No. 17-6, at A131 (Colby); Docket No. 17-7, at B86 (BBR).] Similarly, SRG's Policy excludes from coverage "loss or damage caused by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." [Docket No. 17-8, at C15, C18.][1]

The Policies also have several other clauses that lay out what is included in coverage. [See, e.g., Docket No. 17-1, at 4-6.] However, because those clauses are subject to the Virus

---

[1] SRG's Policy also has a clause that states, "Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event . . . [i]nitiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence." [Docket No. 17-5, at C73.]

Exclusions, they do not affect the Court's analysis and, as such, the Court need not discuss them in depth here.[2]

It is not disputed that, in each of the states in which Plaintiffs operate, the state governments issued orders in response to COVID-19 that precluded Plaintiffs from operating their businesses. [See Docket No. 1, ¶¶ 31-33.] As a result of the loss of business, Plaintiffs filed insurance claims with their respective insurers. Defendants denied those claims.

## II. PROCEDURAL HISTORY

Plaintiffs filed the present action, on behalf of themselves and others similarly situated, on May 15, 2020. [Id.] The parties exchanged pre-motion letters, in accordance with the Court's Individual Rules and Procedures, in June and August 2020. [Docket Nos. 3, 5, 14.] The Court declined to hold a pre-motion conference, [Docket No. 16], and Defendants filed their Motion to Dismiss on September 11, 2020, [Docket No 17]. Plaintiffs timely filed their response in opposition on October 5, 2020. [Docket No. 19.] Defendants timely filed their reply on October 13, 2020. [Docket No. 20.] Moreover, the parties have supplemented their briefs in light of other courts addressing similar legal issues. [See, e.g., Docket Nos. 21-32.]

---

[2] As noted below, the Court will assume, arguendo, that Plaintiffs would be entitled to coverage if not for the Virus Exclusions.

### III. JURISDICTION

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), as this is a putative class action in which the amount in controversy exceeds $5,000,000 and diversity exists between at least one member of the putative class and Defendants. [See Docket No. 1, ¶¶ 9, 11-18.]

### IV. STANDARD

#### A. Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (citing Conley v. Gibson, 355

4

U.S. 41, 47 (1957); Sanjuan v. Am. Bd. Of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the

5

'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

B.   **Applicable Law for Insurance Policy Interpretation**

In New Jersey, courts resolving an insurance coverage dispute will apply "the law of the state that the parties understood was to be the principal location of the insured risk . . . unless some other state has a more significant relationship." Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co., 629 A.2d 885, at 893 (N.J. 1993) (citations and internal quotations omitted). Here, because of the location of Plaintiffs' operations, Florida law applies to BBR's claims, Washington law applies to SRG's claims, and New Jersey law applies to Colby's claims.[3] There is no dispute between the parties

---

[3] In Colby's case, there are multiple states that could conceivably be considered the principal location of the insured risk, since Colby's operations occur in both New Jersey and Delaware. In this instance, "the governing law is that of the state with the dominant significant relationship." Gilbert Spruance, 692 A.2d at 893. Because Colby is a New Jersey corporation with its principal place of business in New Jersey, the Court finds that, as between New Jersey and Delaware, New Jersey has the more significant relationship here. [Docket No. 1, ¶ 11.] However, the Court also notes that its analysis herein would not change if Delaware law applied rather than New Jersey law, since they are substantially the same on the issue of contract interpretation. Compare AT&T Corp. v. Faraday Capital Ltd., 918 A.2d 1104, 1108 (Del. 2007) ("Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."), with Flomerfelt v. Cardiello, 997 A.2d 991,

6

that the law of all three states is uniform for the purposes of this Motion. In short, the following principles will guide the Court in deciding this Motion. First, the interpretation of an insurance policy is a question of law. See Causeway Automotive, LLC v. Zurich Am. Ins. Co., Civil Action No. 20-8393 (FLW) (DEA), 2021 WL 486917, at *3 (D.N.J. Feb. 10, 2021) ("Under New Jersey law, the determination of 'the proper coverage of an insurance contract is a question of law.'" (quoting Buczek v. Cont'l Cas. Ins. Co., 378 F.3d 284, 288 (3d Cir. 2004))); Silvin v. Geico Gen. Ins. Co., 517 F. App'x 781, 783 (11th Cir. 2013) ("The interpretation of provisions in an insurance contract is a question of law . . . .") (citations omitted); Ross v. State Farm Mut. Auto. Ins. Co., 940 P.2d 252, 256 (Wash. 1997) ("The interpretation of insurance policy language is a question of law.") (citations omitted).

Second, an insurance policy will be enforced as written when its terms are unambiguous. See Flomerfelt v. Cardiello, 997 A.2d 991, 996 (N.J. 2010) ("An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled."); Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29,  (Fla. 2000) ("[Where] the policy

---

996 (N.J. 2010) ("An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.").

language is clear and unambiguous . . . [it] must be construed in accordance with 'the plain language of the policy as bargained for by the parties.'") (citation omitted); Ross, 940 P.2d at 256 ("If the language in an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists.") (citations omitted).

And third, the Court will not consider extrinsic evidence in interpreting the contract if the language of the contract is unambiguous. See Manahawkin Convalescent v. O'Neill, 85 A.3d 947, 958-59 (N.J. 2014) ("If the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect.") (alterations omitted); Landmark Am. Ins. Co. v. Pin-Pon Corp., 155 So. 3d 432, 437 (Fla. 4th DCA 2015) ("[W]here a contract is unambiguous, the parties' intent must be gleaned from 'the four corners of the document.'") (citation omitted); Brogan & Anensen LLC v. Lamphiear, 202 P.3d 960, 961-62 (Wash. 2009) ("The parol evidence rule precludes the use of extrinsic evidence to add to, subtract from, modify, or contradict the terms of a fully integrated written contract . . . .").

**V.   ANALYSIS**

Plaintiffs' Complaint alleges six counts. Counts I, III, and V seek Declaratory Judgment declaring that, in short, Defendants

8

were obligated to provide Business Income, Civil Authority, and Extra Expense coverage for Plaintiffs' COVID-19-related losses under the Policies. [Docket No. 1, ¶¶ 77-83, 93-99, 108-14.] Counts II, IV, and VI seek breach of contract with respect to the Policies' Business Income, Civil Authority, and Extra Expense coverage clauses. [Id., ¶¶ 84-92, 100-07, 115-22.] All of the claims require as a threshold matter that Plaintiffs are entitled to coverage under the Policies due to the circumstances outlined above, in spite of Defendants' denial of Plaintiffs' insurance claim.

The parties dispute whether or not Plaintiffs were, as an initial matter, entitled to Business Income and Extra Expense coverage, both of which require that there be a "direct physical loss or damage" to Plaintiffs' properties. [See Docket No. 17-1, at 7-10 (Defendants); Docket No. 19, at 4-18 (Plaintiffs).] They also dispute whether or not Plaintiffs are entitled to Civil Authority coverage. [Docket No. 17-1, at 10-14 (Defendants); Docket No. 19, at 18-21 (Plaintiffs).] As noted earlier, because the Court's decision will rely on the Virus Exclusions, it will assume, arguendo and solely for the purposes of this Opinion, that Plaintiffs are entitled to Business Income, Civil Authority, and Extra Expense coverage as a threshold matter.

Making that assumption, the Court finds that Plaintiffs' claims fail due to the Virus Exclusions, which provide, in Colby's and BBR's Policies:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

[Docket No. 17-6, at A131 (Colby); Docket No. 17-7, at B86 (BBR).]

Likewise, SRG's Policy states:

> We will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

[Docket No. 17-8, at C15, C18.]

It is undisputed that COVID-19 is a virus. Yet, Plaintiffs attempt to convince the Court that the Virus Exclusions should not apply in the circumstances of this case. First, Plaintiffs argue that the Virus Exclusions are "intended to apply only in the event of contamination by bacteria or virus at the insured property." [Docket No. 19, at 21.] Because Plaintiffs' properties allegedly were not contaminated by the coronavirus, they argue that the Virus Exclusions do not apply. But there is nothing in the Virus Exclusions to suggest that they require actual contamination at the insured properties. Rather, the Virus Exclusions explicitly state that Defendants will not cover losses caused by "any virus . . . that induces or is capable of inducing physical distress, illness or disease." As another Court in this District recently

10

held when analyzing the exact same language, "[t]he provision[s] in no way suggest[] that the virus must be present at the insured property for the exclusion to apply." Causeway, 2021 WL 486917, at *5. "Indeed, to accept Plaintiffs' interpretation would require the Court to add additional language that does not appear in the Polic[ies]." Id. To wit, Plaintiffs' support for this argument does not come from the Virus Exclusions' language itself, but rather from ISO Circular LI-CF-2006-175, on which Plaintiffs allege the Virus Exclusions are based. [Docket No. 19, at 21-22.][4] As outlined above, however, the Court will only consider extrinsic evidence when the policy language is ambiguous. While Plaintiffs do argue that the Virus Exclusions are ambiguous, they fail to do so successfully.

A policy is ambiguous when it is susceptible to more than one reasonable interpretation. See Causeway, 2021 WL 486917, at *5 ("A genuine ambiguity exists in an insurance contract 'where the

---

[4] The ISO Circular proposed Virus Exclusion clauses because, although many insurance policies already had exclusions relating to "contamination" in general, "viral and bacterial contamination are specific types that appear to warrant particular attention at this time." [Docket No. 19-8, at 6 (PDF pagination).] While the ISO Circular did caution that "disease-causing agents may . . . enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property," it did not explicitly state that Virus Exclusions should only apply when there is contamination on the property itself, as Plaintiffs argue here. [See id. at 6-9 (PDF pagination).] Instead, it proposed Virus Exclusions for the broad purpose of excluding coverage "relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms." [Id. at 7 (PDF pagination).]

11

phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" (quoting Lee v. Gen. Acc. Ins. Co., 767 A.2d 985, 987 (N.J. Super. Ct. App. Div. 2001))); Anderson, 756 So. 2d at 34 ("If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous."); Ross, 940 P.2d at 256 ("[I]f the policy provision on its face is fairly susceptible to two different but reasonable interpretations, the policy is ambiguous . . . ." (citation omitted)).

Here, as this Court and others have already found, the Virus Exclusions' language is unambiguous. See id. at *5 ("I do not find the Virus Exclusion to be ambiguous in any way." (citing Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., No. L-2629-20, 2020 WL 7422374, at *9 (N.J. Super. Ct. Law Div. Nov. 5, 2020)); Body Physics v. Nationwide Ins., Civil No. 20-9231 (RMB/AMD), 2021 U.S. Dist. LEXIS 44738, at *13-14 (D.N.J. Mar. 10, 2021); Humans & Resources, LLC v. Firstline Nat'l Ins. Co., No. 20-2152, 2021 WL 75775, at *8 (E.D. Pa. Jan. 8, 2021) (quoting Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am., 2020 WL 7024287, at *3 (E.D. Pa. Nov. 30, 2020)); see also Pez Seafood DTLA, LLC v. Travelers Indem. Co., No. 20-4699, 2021 WL 234355, at *7 (C.D. Cal. Jan 20, 2021) ("[T]he Virus Exclusion clearly and unambiguously applies, as courts applying similar exclusions to

12

COVID-19 have consistently found."); AFM Mattress Co., LLC v. Motorists Commercial Mut. Ins. Co., 2020 WL 6940984, at *4 (N.D. Ill. Nov. 25, 2020) (holding that there was "no ambiguity in the [Virus Exclusion's] language"). Plaintiffs offer no compelling argument that the plain language in the Virus Exclusions is susceptible to two reasonable interpretations. Rather, the language is explicit and plainly excludes from coverage any loss caused by "any virus . . . that induces or is capable of inducing physical distress, illness or disease." Therefore, the Court finds that Virus Exclusions are unambiguous. As a result, there is no basis to consider the ISO Circular — extrinsic evidence — in analyzing the Virus Exclusions, and Plaintiffs' argument in that respect fails.

Next, Plaintiffs argue that the state governments' respective closure orders — not the virus itself — were the "efficient proximate cause" of Plaintiffs' losses. [Docket No. 19, at 23-25.] This argument, too, has already been rejected by Courts in this District. See Causeway, 2021 WL 486917, at *5-6 ("The Executive Orders were issued for the sole reason of reducing the spread of the virus that causes COVID-19 and would not have been issued but for the presence of the virus in the State of New Jersey. . . . [T]he 'but for' cause of Plaintiffs' losses was COVID-19—the Executive Orders and the virus are so inextricably connected that it is undeniable that the Orders were issued because [of] the

13

virus."); 7th Inning Stretch LLC v. Arch Ins. Co., No. 20-8161, 2021 U.S. Dist. LEXIS 11326, at *5 (D.N.J. Jan. 19, 2021) ("Because the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiffs' losses are tied inextricably to that virus and are not covered by the policies."). This Court agrees

> that a virus, specifically COVID-19, was the cause of the governmental action. Since the virus is alleged to be the cause of the governmental action, and the governmental action is asserted to be the cause of the loss, plaintiff[s] cannot avoid the clear and unmistakable conclusion that the coronavirus was the cause of the alleged damage or loss.

Mac Prop. Grp. LLC, 2020 WL 7422374, at *8; see also Mattdogg, Inc. v. Phil. Indem. Ins. Co., No. L-820-20, 2020 WL 7702634, at *4 (N.J. Super. Ct. Law Div. Nov. 17, 2020) ("The Governor issued his executive orders affecting Plaintiff's business as a direct result of COVID-19 . . . and any losses incurred therefrom are squarely within the exclusion.") Therefore, the Court will not adopt Plaintiffs' argument that the Virus Exclusions do not apply here due to a lack of causation.

In sum, the Virus Exclusions are unambiguous and they exclude Plaintiffs' alleged losses, which were caused by COVID-19, a virus that has unfortunately affected too many businesses and

14

individuals. Therefore, Plaintiffs' claims in this action are legally insufficient.[5]

## VI. CONCLUSION

For the reasons expressed above, the Court will grant Defendants' Motion to Dismiss [Docket No. 17]. Plaintiffs' Complaint will be dismissed in its entirety. An accompanying Order shall issue.

| | |
|---|---|
| March 12, 2021 | s/Renée Marie Bumb |
| Date | RENÉE MARIE BUMB |
| | United States District Judge |

---

[5] Plaintiffs do not argue that the Virus Exclusions violate public policy.